**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| VIRGINIA VOTER'S ALLIANCE, Inc., and DAVID NORCROSS<br><br>Plaintiffs,<br><br>v.<br><br>ANNA J. LEIDER, in her official capacity as General Registrar for the City of Alexandria,<br><br>Defendant. | )<br>)<br>)<br>)<br>)      Civ. No. 16-394<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ANNA J. LEIDER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF HER MOTION TO DISMISS PURSUANT TO**
**FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Anna J. Leider ("Defendant"), in her official capacity as General Registrar for the City of Alexandria, by counsel, respectfully submits this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  In connection therewith, Defendant respectfully states as follows:

**Procedural Background**

1.      Virginia Voter's Alliance, Inc. ("VVA") and David Norcross ("Norcross"), a Virginia resident and member of VVA, (collectively as "Plaintiffs") commenced this adversary proceeding by filing a Complaint on April 7, 2016 seeking declaratory and injunctive relief to compel Defendant's compliance with Section 8 of the National Voter Registration Act of 1993 ("NVRA").

**Statement of Facts**

2.      VVA is a non-stock Virginia corporation, which asserts that it works to improve election laws and their attendant processes and procedures in order to promote election integrity in the Commonwealth of Virginia.  Norcross is a registered Virginia voter and active member of VVA.  Compl. ¶ 4.

3.      Specifically, Norcross and the VVA membership claim to dedicate time and resources to ensure that voter rolls in the Commonwealth of Virginia are free from ineligible registrants, non-citizens, individuals who are no longer residents and individuals who are registered in more than one location.  Compl. ¶ 4.

4.      Defendant is the General Registrar for the City of Alexandria.  Compl. ¶ 8.

5.      On January 25, 2016, VVA sent a statutory notice letter ("notice letter") to Defendant.  Pursuant to Fed. R. Civ. P. 10(c), a true and accurate copy of the notice letter is attached as Exhibit 1.  The notice letter indicated "your city is in apparent violation of Section 8 of the [NVRA] based on our research . . . [b]ased on our comparison of publicly available information published by the U.S. Census Bureau and the federal Election Assistance Commission, your city is failing to comply with Section 8 of the NVRA" and "in short, your city has more voters on the registration rolls than it has eligible living citizen voters."  *See* Exhibit 1; Compl. ¶ 5.

6.      The notice letter first requested ten categories of information from Defendant and requested an opportunity to discuss "a remedial plan" and inspect certain records.  *See* Exhibit 1; Compl. ¶ 6.

7.      On February 9, 2016, Defendant promptly responded to the notice letter ("response letter").  A true and accurate copy of the response letter is attached as Exhibit 2.  In

her response, Defendant provided recent U.S. Census Bureau statistics for Alexandria and voter statistics to further assist VVA in its inquiry.  *See* Exhibit 2.

8.    The response letter requested that Plaintiffs provide additional information to help her address their concerns, after which a meeting could be scheduled.  *See* Exhibit 2.

9.    Plaintiffs' Complaint is silent regarding their failure to respond to Defendant's response letter, but they acknowledge receipt of the communication.  Compl. ¶ 31

10.    Plaintiffs filed a Complaint in the Eastern District of Virginia, Alexandria Division on April 7, 2016 (the "Complaint").

11.    Paragraph 11 of the Complaint, alleges that "[a]ccording to publicly available data disseminated by the United States Census Bureau and the federal Election Assistance Commission, voter rolls maintained by the Defendant for the City of Alexandria have contained at various times over the past few elections, either more registrants than eligible voting-age citizens or an implausibly high number of registrants."  Compl. ¶ 4.

12.    Paragraph 12 concludes that "Defendant is responsible for allowing these circumstances to occur and persist" and "[b]y failing to implement a program which takes reasonable steps to cure these circumstances, Defendant has violated NVRA and other federal list maintenance statutes."  Compl. ¶ 4.

13.    Paragraph 14 states that "Defendant's failure to undertake reasonable efforts to remove ineligible voters from the City of Alexandria's voter rolls places Plaintiff Norcross at risk of dilution by the casting of a ballot by an ineligible registrant."  Plaintiffs additionally assert that Defendant's failure "to comply with its obligations under federal voter registration laws has undermined confidence of Virginia's properly registered voters . . . in the integrity of the voter

registration rolls, and, accordingly, has undermined the integrity of elections held across the Commonwealth of Virginia."  Compl. ¶ 5.

14.    Plaintiffs contend they have "spent considerable time and financial resources in an effort to improve voter rolls in the City of Alexandria and across the Commonwealth, which have contained more registrants than eligible citizens who reside in the City of Alexandria." Plaintiffs allege that "Defendant's failure to take reasonable efforts to remove ineligible voters from the registration rolls in the City of Alexandria frustrated, impeded and harmed the efforts of VVA and its members."  Compl. ¶ 7.

15.    Relying on these allegations and conclusory statements, Plaintiffs assert two claims against Defendant:

   a.  Count I – Defendant violated Section 8 of the NVRA by failing to make reasonable efforts to conduct voter list maintenance programs; and

   b.  Count II – Defendant violated Section 8 of the NVRA by failing to respond substantively to Plaintiffs' written request for data and failed to provide records to Plaintiffs concerning Defendant's implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters for the City of Alexandria.  Compl. ¶ 7-8.

16.    Accordingly, Plaintiffs ask this Court to declare Defendant in violation of Section 8 of the NVRA.  Additionally, Plaintiffs demand injunctive relief compelling (1) Defendant to implement reasonable and effective registration list maintenance programs to cure failures to comply with Section 8 of the NVRA and ensure that non-citizens and ineligible registrants are not on the Defendant's rolls; (2) Defendant to substantially respond to Plaintiffs' written request for records concerning her implementation of programs and activities to ensure the accuracy and

4

currency of the City of Alexandria's voter registration list; and (3) pay reasonable attorney's fees, including litigation expenses and costs. Compl. ¶ 9.

**Argument**

## I. Standard of Review.

17.     When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "should accept as true all well-pleaded allegations" and should construe those allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). As the Supreme Court recently noted, a complaint need not assert detailed factual allegations, but must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

18.     Furthermore, even assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court "need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Wahi v. Charleston Area Med. Ctr., Inc*., 562 F.3d 599, 615 n.26 (4th Cir. 2009). Moreover, "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com,* 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency

should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

19.     Thus, the Court should grant a motion to dismiss unless the factual allegations in the Complaint raise a reasonable inference that Plaintiffs will be able to make a case. *Twombly*, 550 U.S. at 556.  Plaintiffs "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344-45 (4th Cir. 2006).  Moreover, a complaint must allege sufficient facts to establish plausible grounds upon which the claim rests and must contain more than a claimant's bare averment that he wants relief and is entitled to it.  *See Twombly*, 550 U.S. at 556.

20.     The Supreme Court has stated that the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Twombly*, 550 U.S. at 556.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "entitlement to relief."  *Id.* at 557; *Iqbal*, 556 U.S. at 678.

21.     Moreover, the Supreme Court noted that Article III constitutional standing includes three elements:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of . . . .  Third it must be likely as opposed to merely speculative, that the injury will be addressed by a favorable decision.

*Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 361 (E.D. Va. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  In turn, the injury must be "fairly traceable" to actions of the defendant.  *Lujan*, 504 U.S. at 560.  Furthermore, the injury "must be 'likely,' as

opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision." *Id*. at 560-61.

22.     Constitutional standing is an issue of subject matter jurisdiction and, accordingly, questions of jurisdiction "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, [and] each element must be supported in the same way as any other matter." *Id*.  Recently, the demands placed on initial pleadings have increased substantially with *Iqbal* and *Twombley*.  As such, the Court can grant a Rule 12(b)(1) dismissal based on (1) the complaint alone; (2) the complaint plus undisputed facts; or (3) those two items "supplemented by . . . the court's resolution of disputed facts." *Freeman v. U.S.*, 556 F.3d 326, 334 (5th Cir. 2009).

## II.     The National Voter Registration Act & Help America Vote Act

### a.     Count I – 52 U.S.C. § 20597 & § 21083

23.     Under Count I, Plaintiffs assert that Defendant has failed to make reasonable efforts to conduct voter list maintenance programs, in violation of Section 8 of the NVRA, 52 U.S.C. § 20507 and 52 U.S.C. § 21083.

24.     Subsection 20507 of the NVRA governs the administration of voter registration for elections for Federal offices.  Generally, Section 20507 sets forth provisions applicable to the "State", which is defined to mean a State of the United States and the District of Columbia.  *Id*. §§ 20507(a); 20502(4).

25.     Section (a)(4) requires that each State shall "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of (A) the death of the registrant; or (B) a change in the residence of the registrant, *in accordance with subsections (b), (c), and (d).*" *Id*. § 20507(a)(4) (emphasis added).

26.     Subsection 20507(b) generally provides that registered voters retain eligibility to vote in a federal election, unless they have failed to respond to a notice seeking to confirm eligible residency, *Id.* § 20507(b)(2)(A), and have not voted in two consecutive general elections for federal office.  *Id.* § 20507(b)(2)(B).

27.     Subsection 20507(c) enumerates provisions governing the various types of state programs that may be implemented to remove the names of ineligible voters from the official lists of eligible voters.  Importantly, § 20507(c)(2)(A) provides that "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters."  Subsection (B) provides exceptions to this "90 day rule," and allows removal inside 90 days (1) when the registrant requests to be removed; (2) as provided by State law, by reason of a criminal conviction or mental incapacity; and (3) upon the death of the registrant.  *Id.* § 20507(c)(2)(B)(i).  These exceptions also enable the State to engage in the correction of registration records pursuant to the NVRA during the final 90 days before a federal election.  *Id.* § 20507(c)(2)(B)(ii).

28.     Subsection 20507(d) pertains to the removal of names from voting rolls. Specifically, this section provides that the State shall not remove the name of a registrants from the official list of eligible voters on the grounds that the resident has changed residence unless the resident (1) confirms in writing that they have changed residence to a place outside the jurisdiction in which they are currently registered; or (2) has failed to respond to a notice and has not voted or appeared to vote in two consecutive general elections for federal office.  *Id.* § 20507(d)(1).  Notably, Section 20507(d)(3) provides that "[a] voting registrar shall correct an

official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with this subsection."

29.     Additionally, Plaintiffs' assert violations under 52 U.S.C. § 21083(A)(2)(a) of the Help America Vote Act ("HAVA").  Subsection (a)(2)(A) provides that the appropriate State or local election official shall perform list maintenance with respect to the computerized list as follows: "[f]or purposes of removing names of eligible voters (I) . . . the State shall coordinate the computerized list with State agency records on felony status; and (II) by reason of the death of the registrant . . . the State shall coordinate the computerized list with State agency records on death."   Moreover, § 21083(A)(i) prescribes that if an individual is to be removed from the computerized list, it shall be removed in accordance with the NVRA and, specifically, Section 20507.

30.     The NVRA is discrete from HAVA and does not authorize a private right of action for an alleged violation of HAVA.  *Id.* § 20510.  Furthermore, HAVA does not allow a private right of action.  Instead, it provides two methods for remedying grievances: (1) a civil action brought by the Attorney General; and (2) in states receiving funds under HAVA, "[e]stablishment of State-based administrative complaint procedures."  *Id.* §§ 21111, 21112. Consequently, while Plaintiffs rely on Section 21803 and 20507, Section 20507 controls this analysis.

**b.     Count II – 52 U.S.C. § 20507(i)**

31.   Under Count II, Plaintiffs contend that Defendant failed to respond substantively to their request for data and failed to provide records to Plaintiffs concerning Defendant's implementation of programs and activities for ensuring the accuracy of official lists of eligible voters in violation of 52 U.S.C. § 20507(i).

32.     Section § 20507(i) pertains to public disclosure of voter registration activities.

Specifically, the section states:

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.
> (2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

*Id.* § 20507(i).

## III.   Plaintiffs have failed to state a claim under the NRVA

33.     Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Under Count I, Plaintiffs assert that Defendant has failed to make reasonable efforts to conduct voter list maintenance programs, in violation of Section 8 of the NVRA, 52 U.S.C. § 20507 and §  21083.  Moreover, Plaintiffs allege that Defendant failed to respond substantively to Plaintiffs' written request for data and failed to provide records to Plaintiffs concerning Defendant's implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters for Alexandria in violation of § 20507(i).  Plaintiffs have failed to allege sufficient facts to support a claim under either causes of action.

### a.     Plaintiffs have failed to state a claim under 52 U.S.C. § 20507

34.     Under Count I, Plaintiffs allege Defendant violated the NVRA and HAVA because she "failed to make reasonable efforts to conduct voter list maintenance programs."

Compl. ¶ 7.  Despite this blanket generalized allegation, Plaintiffs fail to establish *any* facts or incident of Defendant's failure to conduct voter list maintenance programs that rise above a speculative level.

35.     To survive a Fed. R. Civ. P. 12(b)(6) motion, a plaintiff must allege enough facts to raise a right to relief above the speculative level and must provide enough facts to state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009); *Twombly*, 550 U.S. at 556.

36.     In an effort to establish their claim, Plaintiffs' only factual assertion is that Defendant's failure to use data available to the City of Alexandria Circuit Court clerk obtained from jury excusal forms establishes evidence of Defendant's failure to maintain the voter rolls.  Plaintiffs argue that "[o]ther counties in the Commonwealth have utilized circuit court clerk data to implement a reasonable list maintenance program, but Defendant has not."  Compl. ¶ 6.  However, Plaintiffs fail to recognize that Defendant is under no legal requirement to use data from jury excusal forms.  Rather, a bill requiring such action from Virginia's Registrars was recently vetoed by Governor McAuliffe.  There is no requirement that Defendant use jury excusal forms in list maintenance.  *See* H.B. 1315, 2015 Leg. (Va. 2015).  No other *fact* in support of this allegation is made.

37.     Plaintiffs cannot rely on the notice letter as support for the alleged violations.  The notice letter contains only generalized, vague conclusions.  Specifically, the notice letter states "[b]ased on our comparison of publicly available information published by the U.S. Census Bureau . . . your city is failing to comply with Section 8 of the [NVRA] . . . [i]n short, your city

has more voters on the registration rolls than it has eligible living citizen voters."  Compl. ¶ 5. No statistics or facts are provided to support these sweeping generalizations.

38.     Plaintiffs offer vague, conclusory statements that "voter rolls maintained by the Defendant . . . have contained at *various times* over the *past few* election cycles, *either* more registrants than eligible voting-age citizens *or* an implausibly high number of registrants." Compl. ¶ 11. (emphasis added).  Plaintiffs' references to "various times" over the course of "the past few election cycles" fails to provide notice of facts that establish any claims under the act, and offers no support or proof of present or ongoing violations.  This is why Defendant requested "additional information about the specific reports and information [Plaintiffs] relied upon" in her response letter.  Moreover, Plaintiffs cannot demonstrate what violation occurred on the voter rolls and appear to offer two separate theories: the voter rolls contained "[1] either more registrants than eligible voting-age citizens or [2] an implausibly high number of registrants." Such speculation cannot support a claim and merely amounts to conclusory and vague conjecture.

39.     Plaintiffs claim that Defendant failed to take "reasonable steps" to remove ineligible voters and, therefore, is responsible for "undermin[ing] confidence of Virginia's properly registered voters."  Despite this vague, bald accusation, the Complaint lacks any proof of the absence of "reasonable steps" to remove ineligible voters.  Nor is their proof of the extreme result; namely, that Defendant, a public servant of Alexandria, undermined the confidence of *all of the registered voters in Virginia*.  Rather, the response letter supports the contention that current voter registration statistics are accurate and Plaintiffs' allegations are unsupported by any pertinent data.  Plaintiffs' vague and conclusory allegations serve as the only foundation to Plaintiffs' claim under Count I.  While the court should accept as true all well-

plead allegations and construe those allegations in the light most favorable to Plaintiffs, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

40.   Accordingly, Plaintiffs' allegations under the Count I of the Complaint merely amount to conclusory statements and do not raise their right to relief above a speculative level. Therefore, Count I should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**b.   Plaintiffs have failed to state a claim under 52 U.S.C. § 20507(i)**

41.   In Count II, Plaintiffs contend that Defendant violated the NVRA by failing to produce records and data.   Specifically, Plaintiffs argue that Defendant failed to respond substantively to Plaintiffs' written request for data and failed to provide records concerning Defendant's implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters for the City of Alexandria.

42.   In support of their claim, Plaintiffs rely on speculative statements and misrepresent facts.   In the Complaint, Plaintiffs provide the notice letter for support that they properly sought information and data from Defendant that must be disclosed under the NVRA. This data included "current registration data, the numbers of voters purged pursuant to maintenance obligations, the number of notices sent to inactive voters, the number of voters removed due to criminal conviction, and the most recent number of registered voters. " Compl. ¶ 5.   However, Plaintiffs incorrectly assert that "Defendant did not provide the information requested and refused to meet to discuss remedies." Compl. ¶ 6.

43.   Rather, Defendant responded to Plaintiffs' request in the response letter on February 9, 2016.   Defendant informed Plaintiffs that "I think your conclusion that Alexandria

has more voters on its registration rolls than it has eligible living citizen voters could be based on old or faulty data." Defendant provided factual and statistical information to Plaintiffs. She never denied the request. Instead, she raised her concern that "it is difficult to address the concerns raised in your letter without additional information about the specific reports and information you relied on to reach your conclusions. For example, was there a particular chart or data set in the "2014 EAC report" that supports your claims?" *See* Exhibit 2. Defendant obliquely references this response in paragraph 31 of the Complaint, but fails to attach the response letter to the Complaint. Consequently, Plaintiffs' statement that Defendant did not respond is incorrect.

44.     Furthermore, in support of their claim, Plaintiffs rely on *Project Vote v. Long*, 682 F.2d 331, 334-335 (4th Cir. Va. 2012), for the contention that the NVRA requires local election officials to provide such data to the public. In that matter, the plaintiffs sent a letter to the Norfolk General Registrar requesting that the registrar make available for inspection various voter registration documents. *Id.* at 333. The registrar responded to the request and indicated that she would not allow inspection or copying of the requested information. *Id.* The plaintiffs again requested the documents but were again denied. *Id.* The plaintiffs wrote a letter to the Secretary of the VSBE and ultimately received an informal opinion from the Attorney General's office denying their request. *Id.* Only after they received a denial from the Attorney General's office, the plaintiffs filed suit in the Eastern District of Virginia. *Id.*

45.     In the instant case, Plaintiffs received a letter from the Defendant providing statistical information and inviting Plaintiffs to enter into a dialogue to resolve the dispute. Despite Defendant's efforts to meet with Plaintiffs, they chose to immediately file suit. In doing so, Plaintiffs based their claims on facts that are misrepresentations; namely, that Defendant

never responded to the notice letter.  Rather, Defendant never denied Plaintiffs' request but instead needed additional information to address their needs.  She then agreed to meet with Plaintiffs.

46.     Moreover, a complaint must allege sufficient facts to establish plausible grounds upon which the claim rests and must contain more than a claimant's bare averment that he wants relief and is entitled to it.  *See Twombly*, 550 U.S. at 556.  Consequently, upon review of the Defendant's response letter, there is no plausible evidence that Defendant failed to produce the records and data.  To the contrary, Defendant disclosed information in the response letter and requested additional information that would enable her to disclose additional requested information.  Accordingly, Plaintiffs have failed to state a claim under Count II.

## IV.  Plaintiffs have failed to state a claim for an injunction

47.     In the Complaint, Plaintiffs demand that this Court "[o]rder . . . the Defendant to implement reasonable and effective registration programs to cure" the alleged failures under Section 8 of the NVRA and "order . . . the Defendant to substantively respond to Plaintiffs' written request for records concerning her implementation of programs and activities to ensure the accuracy and currency of the City of Alexandria's voter registration."  Compl. ¶ 5.  In effect, Plaintiffs demand that they be awarded an injunction ordering Defendant to comply with the NVRA.

48.     This Court is required to apply "the four-factor test historically employed by courts of equity" when determining whether an injunction should be awarded.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).  "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts" and in all cases "such discretion must be exercised consistent with traditional principals of equity."  *Id.* at 394.

49.     In order to obtain a permanent injunction in any case, "'a plaintiff must demonstrate: (1) that is has suffered an irreparable injury; (2) that remedies available at law such as monetary damage, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 2d 556 (E.D. Va. 2007) (quoting *MercExchange, L.L.C.*, 547 U.S. at 391).

      **a.**      **Plaintiffs have failed to establish an injunction should be ordered under Count I**

50.     In Count I, Plaintiffs argue that they have suffered an irreparable injury as a direct result of Defendant's violation of the NVRA because Defendant has aggrieved Plaintiffs by impairing their essential and core mission of fostering compliance with federal election laws, promotion of election integrity and avoiding vote dilution when ineligible voters participate in elections.  Further, Plaintiffs contend that they will continue to be injured by Defendant's alleged violation because confidence in the legitimacy of elections in Virginia will be undermined and burden their right to vote unless the injunction is ordered.

51.     The Complaint fails to address the requisite factors to establish injunctive relief outside of alleging they have suffered an irreparable harm.   Instead, Plaintiffs reiterate conclusory facts and generalizations.   In alleging they have suffered an irreparable harm, Plaintiffs state that "Defendant's failure to take reasonable efforts to remove ineligible voters for the registration rolls in the City of Alexandria frustrate, impeded and harm the efforts of VVA and its members, including Plaintiff Norcross."  Plaintiffs further allege that Defendant's "failure to undertake reasonable efforts to remove ineligible voters" and "implement a program which takes reasonable steps to cure these circumstances" has caused irreparable injury.

52.     Plaintiffs attribute their alleged injury to their assertion that "voter rolls maintained by the Defendant . . . have contained at *various times* over the *past few* election cycles, *either* more registrants than eligible voting-age citizens *or* an implausibly high number of registrants." Compl. ¶ 4. Plaintiffs cannot and do not provide evidence of any specific election or instance where a violation of the law occurred. Instead, Plaintiffs' reference to "various times" over the course of "the past few election cycles" is conclusory and vague. Plaintiffs' reliance on vague and general accusations is further established by Plaintiffs' failure to explain what "reasonable steps" Defendant should have taken to "cure these circumstances." Compl. ¶ 4. Without any factual support, Plaintiffs charge Defendant with "allowing these circumstances to occur and persist." Plaintiffs' allegations are conclusory, vague and wholly conjecture. Most importantly, they do not provide any reliable or substantive factual information regarding how Plaintiff caused "confidence in the legitimacy of the election in Virginia" to be harmed. Without further elaboration on the specific injury suffered, Plaintiffs' allegations of irreparable harm are sweeping generalizations. As such, Plaintiffs' claim lacks the requisite specificity required under *Twombley*.

53.     The Complaint is devoid of any evidence demonstrating that the balance of hardships favors a preliminary injunction in Plaintiffs' favor. Rather, Plaintiffs omit facts establishing that Defendant requested additional information in order to fulfill Plaintiffs' request for information. Notably, in the response letter, Defendant indicated "[i]t is difficult to address the concerns raised in your letter without additional information about the specific reports and information you relied on to reach your conclusions." Consequently, the response letter is evidence that the balance of hardships *would favor the Defendant* rather than the Plaintiffs.

54.     Further, Plaintiffs argue that Defendant's alleged violation will continue to injure the Plaintiffs because "confidence in the legitimacy of elections in Virginia will be undermined and burden their right to vote unless and until Defendant is enjoined from continuing to violate the law."  Again, Plaintiffs' claims are conclusory and do not demonstrate how Defendant has burdened their right vote.  A complaint need not assert detailed factual allegations, but must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

55.     Lastly, Plaintiffs bear the burden of establishing that each factor supports granting the injunction.  The facts pled in the Complaint do not establish any of the requisite elements required of an injunction.  Consequently, Plaintiffs' Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**b.     Plaintiffs have failed to establish an injunction should be ordered under Count II**

56.     Under Count II, Plaintiffs contend that they "have suffered an irreparable informational injury" due to Defendant's violation of the NVRA.  Specifically, Plaintiffs argue that the NVRA confers upon Plaintiffs a right of information and, therefore, Defendants have caused a concrete injury to Plaintiffs by denying their access to the information.  Moreover, Plaintiffs contend that they will continue to be injured until Defendant is enjoined from continuing to violate the law.

57.     As a preliminary matter, at no point did Defendant "deny [Plaintiffs'] access to information."  The response letter never informed Plaintiffs that they would not be granted access but rather requested "additional information about the specific reports and information [they] relied on to reach [their] conclusions."  *See* Exhibit 2.  While Plaintiffs characterize the

response letter as Defendant placing "conditions on her compliance with . . . the NVRA.," the response letter read in its entirety demonstrates the contrary.

58.   Moreover, despite Plaintiffs' broad statements regarding irreparable harm, they have failed to assert any of the requisite factors required under *MercExchange, LLC*. Specifically, the facts as pled in the Complaint do not plausibly suggest:  there is no adequate remedy at law; whether the balance of hardships favors Plaintiffs; and whether the injunction serves the public interest.  Instead, Plaintiffs support their claim with speculative and vague statements and facts that lack the requisite specificity.  Consequently, even if Plaintiffs' allegations were true, they have not demonstrated a claim for injunctive relief.  *See Twombly*, 550 U.S. at 558.  ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.")

59.   Accordingly, Plaintiffs have failed to establish the requisite factors to prove an injunction[1] and, accordingly, Plaintiffs' Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## V.   The Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)

60.   Both of Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction because there is no live case or controversy between the parties.  A challenge to the ripeness of an action is properly brought in the form of a motion to dismiss pursuant to Federal

---

[1] The Complaint does not specify whether Plaintiffs request a preliminary injunction or a permanent injunction.  The factors considered for a preliminary injunction are similar but slightly different than those considered for a permanent injunction.  *See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 599 U.S. 1089, 130 S. Ct. 2371 (2010).  In the event that Plaintiffs request a preliminary injunction, they have also failed to state a claim because they have failed to establish an irreparable injury for the same aforementioned reasons presented in this section.

Rules of Civil Procedure 12(b)(1).  It is long-settled that "[t]he burden of proving ripeness falls on the party bringing the suit."  *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).

61.     "The doctrine of ripeness stems from Article III's command that federal courts have jurisdiction only over cases and controversies and represents one of the justiciability doctrines designed to assess whether an actual an actual case or controversy exists."  *S.C. Citizens for Life, Inc. v. Krawcheck*, 301 F. App'x 218, 220 (4th Cir. 2008).  Specifically, "[r]ipeness concerns the the 'appropriate timing of judicial intervention."  *Va Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001).  To determine whether a claim is ripe "a court must evaluate (1) 'the fitness of the issues for judicial decision' and (ii) 'the hardship to the parties of withholding court consideration.'"  *Krawcheck*, 301 F. App'x at 220 (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967)).  In analyzing the first prong, the Fourth Circuit has noted that "[a] case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties."  *Miller*, 462 F.3d at 319.  As for the second prong, hardship "is measured by the immediacy of the threat and the burden imposed on the [plaintiffs] who would be compelled to act under threat of enforcement of the challenged law." *Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992).

62.     In the instant matter, Plaintiff has not established a ripe dispute or any live controversy between the parties.  Specifically, Defendant never denied Plaintiff access to the requested data.  Rather, Defendant asked Plaintiffs for additional information so she could better serve their request.  Upon receiving the information from Plaintiffs, Defendant stated she would meet with Plaintiffs.  However, Plaintiff never responded to her requests and filed this suit.  The harm Plaintiffs allegedly suffer is self-created and cannot confer jurisdiction in this court.  As

Plaintiffs chose not to meet with Defendant, this action cannot be "final" and is "dependent on future uncertainties." *Miller*, 462 F.3d at 319.

63.     Furthermore, Plaintiffs allege they suffer future harm by exclusively relying on conclusory and vague statements.   Specifically, Plaintiffs assert Defendants' behavior has "undermined confidence of Virginia's properly registered voters . . . in the integrity of the voter registration rolls, and, accordingly, has undermined the integrity of elections held across the Commonwealth of Virginia."   Plaintiffs fail to provide any evidence other than speculation and vague statements that support their harm.   Accordingly, this Court cannot properly assess the "immediacy of the threat and the burden imposed" on Plaintiffs and, therefore, should conclude that Plaintiffs' claims are not ripe under Article III.

## VI.     Plaintiffs lack standing to bring this claim

64.     Plaintiffs do not possess standing to bring this action before the Court. Specifically, Plaintiffs fail to establish any concrete and particularized injury that is fairly traceable to Defendant and could be redressed by the relief sought.   Additionally, VVA lacks organizational standing.

### a.     Plaintiffs lack constitutional standing

65.     Both Plaintiffs must demonstrate constitutional standing in order bring their claims before the Court.   As an entity, VVA must meet the same strict test for constitutional standing that applies to Norcross and all other individuals.   *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982).   Consequently, Plaintiffs must prove "the irreducible constitutional minimum of standing" established in *Lujan*.   As such, Plaintiffs must demonstrate three factors: (1) that they "have suffered an 'injury in fact' – an invasion of legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) a

causal connection between the injury and the conduct complained of – "the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court;" and (3) it must be "'likely' as opposed to 'speculative,' that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61. (internal citations omitted).

66. Specifically, Plaintiffs argue that (1) "VVA, as well as its members and supporters in Virginia, including [Norcross], will continue to be injured . . . because confidence in the legitimacy of elections in Virginia will be undermined and burden their right to vote" and (2) they have been injured because Defendant impaired "their essential and core mission of fostering federal election laws, promotion of election integrity, and avoiding vote dilution when ineligible voters participate in elections." Compl. ¶ 7. Under the NVRA, none of these interests are (1) an injury in fact; (2) caused by Defendant that is (3) likely to be redressed by the relief sought.

  **i. "Confidence in the legitimacy of elections" and "Burden their right to vote"**

67. Plaintiffs' argument that "confidence in the legitimacy of the elections" will be shaken and "burden their right to vote" is an abstract sentiment and does not meet the requisite standard under *Lujan*. Specifically, Plaintiffs' assertions are neither concrete nor particularized and, when viewed in the most favorable light, are conjecture and hypothetical. Allegations of injuries that merely amount to "generalized grievances about the conduct of the Government," *Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 217 (1974), or "setback[s] to the organization's abstract social interests, *Havens Realty*, 455 U.S. at 379, do not establish a sufficient injury in fact.

68.     Despite Plaintiffs' failure to assert an injury in fact, they have failed to establish the remaining requirements under *Lujan*.  In the Complaint, Plaintiffs offer no information or facts that establish any personal stake in this controversy rather than general grievances.  For example, Plaintiffs enumerate that they have "spent considerable time and financial resources in an effort to improve voter rolls" and, accordingly, Defendant's alleged failure to remove ineligible voters "frustrate[d], impeded and harm[ed] the efforts of" Plaintiffs.  In making such general allegations, Plaintiffs  neglect to offer any evidence of how Defendant, a public servant in the City of Alexandria, has caused a "confidence in the legitimacy of the elections" to be harmed and "burden[ed] their right to vote."  The facts presented in the Complaint do not support any relation between Defendant's conduct and the Plaintiffs' purported injury.  Accordingly, Plaintiffs have not demonstrated that the injury they allegedly have suffered is "fairly traceable" to Defendant.

69.     Similarly, Plaintiffs have not established that an injunction would redress the injury allegedly caused.  In the Complaint, Plaintiffs argued that voter rolls contained "at various times over the past few election cycles, either more registrants than eligible voting-age citizens or an implausibly high number of registrants."  In her response letter, Defendant disagreed with this contention and suggested Plaintiffs' findings "could be based off of old or faulty data."  *See* Exhibit 2.  To support her stance, Defendant provided Plaintiffs with updated Census data and statistics of active registered voters.  Still, Defendant suggested "additional information" would be helpful for her to "address the concerns raised in [the notice letter]."  *See* Exhibit 2.  As such, even while unclear of Plaintiffs' alleged injury, Defendant attempted to redress their harm, which Plaintiffs refused by filing this suit.  Accordingly, Plaintiffs offer no evidence to suggest that an

injunction would properly redress the situation.  Rather, an injunction would force Defendant to follow the NVRA, which Plaintiffs have not successful demonstrated she has violated.

70.     Similarly, Plaintiffs offer no evidence that an injunction would change the voter registration count or restore voter's "confidence in the legitimacy of elections."  The order sought would merely require Alexandria election officials to follow existing law and there is no indication that a court order would change the voter-registration count at all.  Consequently, an injunction would provide little relief to Plaintiffs' alleged injury in fact.

### ii.     "Impairing [VVA's] essential and core mission"

71.     Additionally, Plaintiffs allege they have been injured because Defendant impaired "their essential and core mission of fostering federal election laws, promotion of election integrity, and avoiding vote dilution when ineligible voters participate in elections."  By way of inference, it appears Plaintiffs argue that Defendant's actions harmed election integrity and caused vote dilution.  Plaintiffs fail to expressly state this in its Complaint, however, and merely argue that Defendant has impaired VVA's essential and core mission.

72.     In turn, Plaintiffs have failed to establish that any vote has or will be in imminent danger of being diluted.  Moreover, Plaintiffs hypothetical and speculative statements alleging voter dilution do not establish any potential concrete or particularized injury.  As a voter has a particular, concrete, and imminent interest in casting their own vote, it does not follow that they have a "legally protected interest" in having the name of *another registered voter* struck from the rolls.  *Lujan*, 504 U.S. at 560.

73.     Furthermore, Plaintiffs have not established any causal connection attributing vote dilution to the Defendant or to any redress that might be provided by this Court against the Defendant.  Plaintiffs' suggestion that an injunction would protect voter dilution is far-reaching

considering an injunction will only ensure that Defendant continues to follow the law while performing her duties as General Registrar.  Currently, Plaintiffs have not established any facts other than conjecture and hypothetical statements that suggest Defendant has been acting unlawful under § 20507.

74.     Moreover, the NVRA requires that each State "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters."  As General Registrar in Alexandria, Defendant is responsible for carrying out this law.  Consequently, for any voter dilution to be fairly traceable to Defendant's conduct, the ineligible voters must not only vote in an election but also be names that *should have been removed* pursuant to § 20507.  Unless a name would have been removed by "a reasonable effort" consistent with § 20507, then the supposed injury cannot be traceable to Defendant's conduct or redressable by her. Plaintiffs have failed to provide any factual information that would demonstrate such a causal link.  Further, to the extent that the Complaint challenges the strictness and efficiency of the Virginia program, the proper recourse would be with a different defendant.

75.     Secondly, if the alleged injury in fact is merely impairing the core mission of the VVA, Plaintiffs have also failed to establish standing.  While the presence of a confliction between Defendant's conduct and VVA's mission is "necessary . . . though not alone sufficient . . . to establish standing," an organization's claim to standing cannot rest on such a conflict alone. *Ass'n of Comm. Orgs. For Reform Now v. Fowler*, 178 F.3d 350, 361 (5th Cir. 1999).  Moreover, "the essence of standing is not a question of motivation but of possession of the requisite interest that is, or is threatened to be, injured by the unconstitutional conduct."  *Schlesinger*, 418 U.S. at 225-26.  Plaintiffs have not cited specific information from the Census Bureau or any other official voter registration list that supports its alleged injury but rather offer sweeping allegations

and generalizations.  Accordingly, Plaintiffs' contention that Defendant's conduct has impaired the core mission of the VVA is meritless because all the evidence suggesting Defendant acted against the VVA's interest is conjecture and speculative.  Accordingly, Plaintiffs have failed to establish an injury in fact.

76.     Further, all evidence outlined in the pleadings suggests that Defendant, as General Registrar, is actively concerned in maintaining the integrity of the voting process and fostering federal election laws.  This was further demonstrated when Defendant attempted to communicate with Plaintiffs and alleviate their concern that Alexandria "has more voters on the registration rolls than it has eligible living citizen voters."  Consequently, it is difficult to characterize Defendant's actions and attempts to assist Plaintiffs as contrary to the VVA's interests. Accordingly, Plaintiffs have failed to establish that Defendant's conduct is fairly traceable to their alleged injury.  As such, Plaintiffs do not have standing to bring their claim.

        **b.**      **Plaintiffs do not have organizational standing**

77.     As Plaintiffs do not have constitutional standing to bring this suit, it follows that the VVA has not established that Norcross or any individuals with whom it has a sufficient membership relationship has individual standing to bring this claim.

78.     Generally, an organization has standing to bring suit on behalf of its members when "[1] its members would otherwise have standing to sue in their own right; [2] the interests it seeks to protect are germane to the organization's purpose; and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).  Moreover, organizations must specify members in order to separate mere statistical probability from those interests particular enough to establish standing.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-499

(2009).  Consequently, "plaintiffs claiming organizational standing [must] identify members who have suffered the requisite harm."  *Id.* at 499.

79.    As established previously, Norcross lacks constitutional standing to bring this claim and VVA has not identified any specific members who would have standing to sue in their own right.    Accordingly, VVA has failed to identify any member, or whether it even has membership-style relationships, that might be representational enough to convey standing.

## Conclusion

80.    A complaint must allege sufficient facts to establish plausible grounds upon which the claim rests and must contain more than a claimant's bare averment that he wants relief and is entitled to it.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  This Court should grant Defendant's Motion to Dismiss unless the factual allegations in the Complaint raise a reasonable inference that Plaintiffs will be able to make their case.  *Id.*  Plaintiffs have not plausibly demonstrated an entitlement to relief because of their failure to establish the requisite factors required for a preliminary injunction and violations under the NVRA under Counts I and II.   Additionally, Plaintiffs lack subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) constitutional and organizational standing.   Accordingly, this Court should grant Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismiss the Complaint with prejudice.

WHEREFORE, Anita J. Leider, in her official capacity as General Registrar for the City of Alexandria, respectfully requests that the Court: (i) dismiss the Complaint filed by the Virginia Voter's Alliance, Inc. and David Norcross with prejudice for lack of constitutional and organizational standing; (ii) dismiss the Complaint filed by the Virginia Voter's Alliance, Inc. and David Norcross with prejudice for failure to state a claim upon which relief can be granted

pursuant to Fed. R. Civ. P. 12(b)(6); and (iii) grant Defendant such other and further relief as may be just and proper.

Respectfully submitted,

ANNA J. LEIDER, in her official capacity
General Registrar for the City of Alexandria

By: ___/s/ William W. Tunner_____
              Counsel

William W. Tunner, Esquire (VSB #38358)
David N. Gustin, Esquire (VSB #86350)
*Thompson*McMullan, P.C.
100 Shockoe Slip
Richmond, Virginia 23219
Telephone: (804) 698-6205
Facsimile: (804) 780-1813
Email: wtunner@t-mlaw.com
Email: dgustin@t-mlaw.com

*Counsel for Anna J. Leider*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the 29th day of April, 2016, a true and accurate copy of the foregoing Motion was served via First Class U.S. Mail (postage prepaid), via email and/or via the Electronic Case Filing (ECF) system, as appropriate and as indicated, on the following parties:

J. Christian Adams (VSB#42543)
Noel H. Johnson
Public Interest Legal Foundation
209 W. Main Street
Plainfield, IN 46168
Phone: (317) 203-5599
Fax: (888) 815-5641
E-mail: adams@publicinterestlegal.org
E-mail: njohnson@publicinterestlegal.org

                    /s/ William W. Tunner
                    William W. Tunner