**United States District Court**
**Eastern District of Virginia**
**Alexandria Division**

| | |
|---|---|
| **VIRGINIA VOTER'S ALLIANCE and DAVID NORCROSS** <br><br> *Plaintiffs*, <br><br>    *v.* <br><br> **ANNA J. LEIDER, in her official capacity as General Registrar for the City of Alexandria** <br><br> *Defendant*. | Civ. No. 16-394-LBM/MSN |

## Memorandum in Opposition to Anna J. Leider's
## Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)

Plaintiffs Virginia Voter's Alliance ("VVA") and David Norcross, through counsel, file this memorandum in opposition to Defendant Anna J. Leider's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6). (Dkt. 8.)

### SUMMARY OF THE ARGUMENT

This is an action brought under the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501, *et seq.*, to enforce obligations of election officials to maintain accurate voter registration rolls and to make public records and information related to those obligations. At times during the last few election cycles, the voter rolls in Alexandria City have contained more registered voters than there are living individuals eligible to vote. (Complaint, Dkt. 1, ¶ 11.) In other words, Alexandria's voter registration rate has *exceeded one-hundred percent*. (*Id.*) At others times, Alexandria's voter registration rate has been implausibly high. (*Id.*)

The Defendant has filed a Motion to Dismiss under Rule 12(b)(6) and Rule 12(b)(1) (Dkt. 8), and a memorandum in support (Dkt. 9 ("MTD")). Plaintiffs oppose Defendant's

motion. The Defendant contends that a Rule 12(b)(6) motion should be granted because Counts I and II fail to state a claim under the NVRA. The Defendant also argues that dismissal is warranted under Rule 12(b)(1) because Plaintiffs lack standing and their claims are not ripe.

Plaintiffs' Complaint states a claim under the NVRA. The Complaint adequately pleads a *prima facie* case under the NVRA because it alleges that Defendant's voter registration rolls have contained more registrants than eligible living citizens and also that Defendant is failing to "make[] a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4). Other federal courts hearing nearly identical claims have ruled that the Plaintiffs have adequately pleaded standing and that Plaintiffs claims are redressable by this Court.

Defendant admits she has withheld records to which Plaintiffs are entitled under the NVRA. She excuses her actions on the grounds that Plaintiffs did not supply *her* with additional data and "chart[s]." However, the NVRA gives Defendant no right to condition her compliance with the NVRA. Defendant's Motion should be denied because it is contrary to a finding by this Court, considering the *same* informational rights Plaintiffs seek now to enforce. This Court found that an "alleged informational injury is sufficient to survive a motion to dismiss." *Project Vote/Voting for America v. Long*, 752 F. Supp. 2d 697, 703-704 (E.D. Va. 2010).

For the reasons that follow, Plaintiffs continue to be harmed by Defendant's violations of law. A live controversy between the parties exists and it is ripe for adjudication.

## FACTUAL BACKGROUND

Plaintiff Virginia Voter's Alliance ("VVA") is a Virginia-based organization dedicated to promoting and ensuring election integrity in the Commonwealth of Virginia. (Complaint ¶ 4.) Plaintiff David Norcross is a registered voter in the City of Alexandria and a member of VVA.

(Complaint ¶ 5.) As a member of VVA, Plaintiff Norcross shares VVA's mission to promote compliance with federal and state statutes that ensure the integrity of elections, including compliance with the NVRA. (Complaint ¶ 14.)

Section 8 of the NVRA requires election officials, including the Defendant, to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4). Defendant admits that she is responsible for compliance with this federal mandate. (MTD ¶ 74; *see also* Complaint ¶ 7 (compiling statutes governing Defendant's list maintenance duties).)

According to publicly available data disseminated by the U.S. Census Bureau and the federal Election Assistance Commission ("EAC"), the voter rolls maintained by the Defendant have contained an implausible, and even an impossible, number of registrants for several election cycles. (*See, e.g.*, Complaint ¶ 11.) The rolls have contained more registrants than eligible living citizens. *Id.* Plaintiffs have "spent considerable time and financial resources in an effort to improve voter rolls in the City of Alexandria and across the Commonwealth." (Complaint ¶ 25.)

Compelled by the state of the Defendant's voter rolls, on January 25, 2016, Plaintiff VVA, "writing on behalf of VVA and its members and supporters who are registered to vote in the Commonwealth of Virginia, sent a statutory notice letter to Defendant notifying her that the City of Alexandria was in violation of federal voter registration laws." (Complaint ¶ 16.) The notice letter alerted Defendant that she is in "apparent violation" of the NVRA's list maintenance obligation and further requested records that pertain to Defendant's efforts to maintain the accuracy and currency of Alexandria's voter rolls. (Complaint ¶¶ 16-19.) Plaintiffs also informed the Defendant "that a lawsuit may be brought against her to ensure compliance with the requirements of federal voter registration laws." (Complaint ¶ 25.)

Defendant responded to Plaintiffs' notice letter in a letter dated February 9, 2016. (Dkt. 9-2.) In her letter Defendant "assure[d] [VVA] that the City is in compliance with NVRA" and did not provide the information requested by the Plaintiffs. (Dkt. 9-2 at 1.) Defendant also stated, "once receive we receive" additional information, such as "particular chart[s]" and "data," she would be willing to discuss the violations alleged in the notice letter. (Dkt. 9-2 at 2.)

Because Defendant did not act to cure the violations alleged in the notice letter or provide information requested in the notice letter, this lawsuit was filed.

## ARGUMENT

### I.  Plaintiffs Have Pleaded a Cause of Action Under NVRA.

#### A.  Standard of Review under Rule 12(b)(6).

The standard of review governing a Rule 12(b)(6) motion to dismiss is well established. While a complaint need not contain detailed factual allegations, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*.

In addition, this Court must "accept as true all well-pleaded allegations" and should construe those allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "Rule 12(b)(6)'s purpose is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)

(quotations and citations omitted). A Rule 12(b)(6) motion should be granted "only if it is clear

that no relief could be granted under any set of facts that could be proved consistent with the

allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

**B. Plaintiffs Have Adequately Alleged that Defendant Is Not Complying With Section 8 of NVRA and Properly Maintaining Voter Rolls.**

The NVRA requires that election officials "conduct a general program that makes a

reasonable effort to remove the names of ineligible voters from the official lists of eligible

voters." (Complaint ¶ 8 (citing 52 U.S.C. § 20507(a)(4).) Defendant admits that, "[a]s General

Registrar in Alexandria, [she] is responsible for carrying out this law." (MTD ¶ 74.)

Defendant is incorrect when she asserts that Plaintiffs allege no facts that plausibly

demonstrate that Defendant has failed to use reasonable efforts to remove ineligible voters from

Alexandria's voter rolls. (*See* MTD ¶ 34.) In both the statutory notice letter received by

Defendant (Dkt. 9-1) and the Complaint, Plaintiffs allege that voter rolls maintained by the

Defendant contain "more registrants than eligible voting-age citizens or an implausibly high

number of registrants." (Complaint ¶ 11.)

The plain meaning of the former allegation is that Alexandria's voter registration rate has

exceeded *one-hundred percent* of its citizen voting-age population. That is an impossibly high

registration rate and establishes a well-pleaded case that the Defendant has failed to reasonably

maintain voter rolls in violation of the NVRA. The plain meaning of the allegation is that, at

times, Alexandria's voter registration rate is at such a high level as to indicate that Defendant is

not using reasonable list maintenance efforts in violation of the NVRA.

When voter rolls contain more registrants than living eligible voters, the plausibility

standard in *Iqbal* is satisfied. *See Iqbal*, 556 U.S. at 678. As a practical matter, when a plaintiff's

5

complaint alleges that an election official has allowed rolls to include more than one-hundred percent of age-eligible citizens living in a jurisdiction, the complaint contains a well-pleaded allegation that the Defendant has violated the list maintenance provisions of the NVRA by failing to reasonably maintain voter rolls. Defendant's 12(b)(6) motion should be denied.

Another federal court hearing nearly identical list maintenance claims under the NVRA has already ruled that an allegation that there are more registrants on the rolls than there are eligible living citizens is sufficient to survive a motion dismiss. In *ACRU v. Tax Assessor-Collector Cindy Martinez-Rivera*, No. 2:14-cv-00026 (W.D. Tex. 2014) ("*ACRU*") (attached as Exhibit 1), the plaintiff, a nonprofit corporation that "promotes election integrity, compliance with federal election laws, government transparency and constitutional government," filed a complaint in federal court on behalf of itself and "on behalf of its members who are registered to vote in the State of Texas." *ACRU* at 2. The Complaint named as the Defendant the "official responsible for ensuring that [the] County complies with the list-maintenance provisions of the NVRA." *Id*. Like Plaintiffs' Complaint, the *ACRU* complaint alleged that the "the voter rolls for [the] County have more registered voters than there are citizens in the County who are eligible to vote." *Id*. The *ACRU* plaintiff additionally alleged that the County had "failed to maintain accurate voter rolls" over previous election cycles. *Id*.

Before filing suit, the *ACRU* plaintiff notified the defendant by letter that "the County's registration rolls have too many registered voters" and requested additional information concerning list maintenance duties. *Id*. at 2-3. When the defendant failed to take corrective actions to remove ineligible voters, the plaintiff filed an action in federal court.

The *ACRU* defendant moved to dismiss under Rules 12(b)(6) and 12(b)(1), as the Defendant here has done. *Id*. Under Rule 12(b)(6), the defendant argued, *inter alia*, that "the

6

Complaint fail[ed] to allege specific acts by the Defendant that amount to a violation of the NVRA." *Id.* Specifically, the defendant argued "that high registration rates do not demonstrate an NVRA violation; in essence, that the facts in the Complaint do not plausibly demonstrate that ACRU is entitled to relief." *Id.* at 16. The court disagreed.

Relying on the Supreme Court's 12(b)(6) jurisprudence, the court held that "the Plaintiff alleged a plausible claim for relief" under the NVRA. *Id.* at 17. Specifically, the court concluded that the County's "high registration rate . . . creates a strong inference that the Defendant has neglected her duty to maintain an accurate and current voter registration roll." *Id.* Such a "strong inference" is "adequate to survive a motion to dismiss under Rule 12(b)(6)."[1] *Id.*

As in *ACRU*, Plaintiffs here allege that the voter rolls maintained by the Defendant have "either more registrants than eligible voting-age citizens or an implausibly high number of registrants." (Complaint ¶ 11.) Defendant here makes the same argument that the defendant made in *ACRU*, namely, that such allegations "cannot support a claim and merely amounts to conclusory and vague conjecture." (MTD ¶ 38.) To the contrary, as in *ACRU*, when taken as true—as they must be at this stage—Plaintiffs' allegations concerning Alexandria's voter rolls allow this Court to reasonably infer that Defendant has fallen short of using reasonable efforts to remove ineligible voters in violation of the NVRA. *Iqbal*, 556 U.S. at 678.

But the Complaint in this case pleads even more facts than the plaintiff successfully pleaded in the *ACRU* case. Plaintiffs have also alleged a specific failure by Defendant to use readily available data to remove non-citizens and other ineligible voters from the rolls. Plaintiffs

---

[1] Just last week, the federal District Court for the Southern District of Texas relied on the reasoning of *ACRU* to deny a motion to dismiss in an identical case brought pursuant to the list maintenance provisions of the NVRA. *See American Civil Rights Union v. Montalvo*, No. 7:16-cv-103 (filed March 4, 2016) (Minute Entry of May 9, 2016, denying Motion to Dismiss for Failure to State a Claim) (attached as Exhibit 6).

allege that "Defendant undertakes absolutely no effort whatsoever to use data available to the City of Alexandria Circuit Court Clerk obtained from jury excusal forms." (Complaint ¶ 17.) That data "identifies numerous Alexandria residents who self-identify as non-citizens or non-residents of the City of Alexandria. The data also identifies potentially obsolete mailing addresses of registrants." (*Id*.) Because these residents have provided written notice of their ineligibility to vote, Defendant may take steps to investigate and potentially remove them from the rolls. 52 U.S.C. § 20507(d)(1). Yet Defendant admits in her Answer that she does not utilize this data. (Answer ¶ 17.) Virginia law does not prohibit local election officials from policing their rolls using a variety of tools to accomplish the goal of accurate voter rolls.

Another analogous decision from the federal District Court for the Southern District of Indiana also supports denial of the Defendant's motion to dismiss. In *Judicial Watch v. King*, two organizations sued election officials in Indiana for failure to comply with the same list maintenance and public inspection requirements of the NVRA. 993 F. Supp. 2d 919, 920 (S.D. Ind. 2012). The plaintiff organizations demonstrated the defendant's potential failure to comply with the NVRA in their notice letter and complaint by a "comparison of [2010] Census data and voter registration data, which indicate[] that the numbers of persons registered to vote exceeded the total voting population" in several Indiana counties, and was implausibly high in other counties. *Id*. at 921. As the Defendant does here, the defendants in Indiana argued that such allegations were insufficient to put the election officials on notice that a violation of the NVRA had occurred, and thus the NVRA's statutory notice provision had not been satisfied. *Id*. at 921. The court rejected the defendants' argument.

To satisfy the NVRA's notice provision, a notice letter "does not [need to] state unequivocally that a violation of the NVRA *has occurred*," the court explained. *Id*. at 922

(emphasis in original). Rather, it is enough that the letter speaks of an "apparent violation" or that "available information 'strongly suggests' non-compliance with the NVRA."[2] *Id.*

The defendant in *Judicial Watch* also claimed the notice letter lacked "sufficient details" about the alleged violations of the NVRA to satisfy the notice required. *Id*. The court, likewise, rejected this argument. "It is not surprising," the court explained, "that the Letter does not contain any detailed allegations, inasmuch as the NVRA provision at issue does not contain any detailed requirements; it simply requires 'reasonable efforts'" on the part of election officials. *Id*. Accordingly, the court held it is sufficient to plausibly state a violation of the NVRA to provide "the reasons" for the plaintiff's conclusion that the defendant has not complied with that general requirement. *Id*.

VVA's notice letter and complaint make the same allegations that Judicial Watch and ACRU did in those cases and Defendant's motion to dismiss should therefore be denied.

---

[2] The approval by the United Stated District Court for the Western District of Texas and the Southern District of Indiana of a general comparison between United States Census Bureau and the federal Election Assistance Commission voter registration data is sound. Census data has a presumption of validity in election cases that rely on the data. "Data from a prior decennial census is presumed accurate unless contradicted by clear, cogent, and convincing evidence." *United States v. Charleston County*, 316 F. Supp. 2d 268 (D.S.C. 2003), *aff'd.*, 365 F.3d 341 (4th Cir. 2004); *see also Valdespino v. Alamo Heights Ind. Sch. Dist.*, 168 F.3d 848, 853 (5th Cir. 1999); *accord, Garza v. County of Los Angeles*, 918 F.2d 763, 772 (9th Cir. 1990); *Johnson v. DeSoto County Bd. of Comm'rs*, 204 F.3d 1335, 1341 (11th Cir. 2000).

Voter registration data disseminated by the EAC is equally reliable in that it is compiled and submitted by the election officials themselves. In fact, before it is made public, it is "sent back to the States for review and verification," during which time "the Chief Election Official" of each State "must certify in writing that the information being presented to the EAC is true and accurate to the best of his/her knowledge." Election Assistance Commission, A Guide to the Election Administration and Voting Survey at 2-3, *available at* http://www.eac.gov/assets/1/Documents/FINAL%20Election%20Administration%20and%20Voting%20Survey%20Guide.pdf. Plaintiffs' allegations, based on reliable data, are sufficiently pleaded.

Plaintiffs here state that Alexandria is in "apparent violation" of the NVRA, a conclusion that is supported by a comparison between Census data and voter registration data. (Complaint ¶ 16.)

*Judicial Watch*'s holding is supported further by Rule 8 of the Federal Rules of Civil Procedure. Rule 8 "requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary[.]" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). For a claim to survive a motion to dismiss for failure to state a claim, it simply must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93. The purpose of the NVRA's statutory notice requirement is similar to Rule 8; it is designed to provide election officials with fair notice that a violation is occurring and to provide them with a chance to cure the violations prior to litigation. *Reform Now v. Miller*, 129 F.3d 833 (6th Cir. 1997).

Under *Judicial Watch*, Plaintiffs' allegations that a statistical comparison of Census data and registration data shows that the Defendant is in "apparent violation" of the NVRA's list maintenance provision is legally sufficient to satisfy the NVRA's notice provision. As the notice provision serves essentially the same purpose as Rule 8, *Judicial Watch* provides additional support that Plaintiffs' allegations are sufficient to survive the Defendant's motion to dismiss for failure to state a claim. Plaintiffs here go even further by pleading specific list maintenance activities that Defendant could undertake but is not, namely, reviewing jury excusal information.

A complaint under NVRA need not detail a checklist of uncompleted list maintenance tasks as the Defendant argues. (MTD ¶ 39.) The statute speaks in broad terms. Defendant must "conduct a general program." 52 U.S.C. § 20507(a)(4). The "program" must make a "reasonable effort" to remove "ineligible voters from the official lists of eligible voters." *Id.* Prior to 90 days before any federal election, Defendant must complete any program "to systematically remove the

names of ineligible voters." 52 U.S.C. § 20507(c)(2)(A). Indeed, no plaintiff could have any way to know what specifically an election official is or is not doing save for compliance with public information demands, or, through discovery once litigation has commenced. That the Plaintiffs here could ascertain that Defendant is failing to use readily available jury excusal information was ascertained only because the Alexandria Circuit Court Clerk complied with a public records request. Notably, the Defendant refused to comply with a counterpart informational request.

The Defendant misunderstands the statutory obligations at issue in this case. Congress provided election officials flexibility to implement a generalized program to keep voter rolls clean. Congress did not include a detailed checklist of steps within the NVRA for election officials to follow. Rather, Congress enacted NVRA "to protect the integrity of the electoral process . . . and to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). But flexibility does not absolve Defendant when the Defendant has allowed voter rolls to reach implausible or impossible registration levels. An election official has an obligation to use tools to maintain the rolls that are reasonably matched to the circumstances.

Plaintiffs' allegations, coupled with Defendant's admission, easily permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and are sufficient to raise the right to relief "above the speculative level," *Twombly*, 550 U.S. at 555.

**C. Plaintiffs Were Denied Public Information and Inspection Rights Under NVRA and Defendant's Motion to Dismiss Must be Denied.**

Under Count II, Plaintiffs sought records "concerning Defendant's implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters for The City of Alexandria." (Complaint ¶ 31.) Under nearly identical circumstances, this Court and the Fourth Circuit ruled that public inspection and information rights under the NVRA

11

obligate Defendant to provide this information to the Plaintiffs. *See Project Vote*, 752 F. Supp. 2d at 703; *Project Vote v. Long,* 682 F.3d 331, 334-335 (4th Cir. Va. 2012). Defendant's motion must be denied pursuant to *Project Vote.*

In *Project Vote*, a nonprofit organization requested in writing that the General Registrar of Norfolk, Virginia, make voter registration records available for inspection and copying pursuant to the NVRA. *Project Vote*, 752 F. Supp. 2d at 698-99. The election officials denied access. *Id*. at 699-700. Accordingly, Project Vote filed suit in order to enforce the NVRA's public disclosure provision. *Id*. at 700. Project Vote's complaint simply alleged that defendants' refusal to permit inspection and copying of the requested records violated the public disclosure provision of the NVRA. *Project Vote*, 682 F.3d at 334. These allegations were sufficient to plausibly state a claim under the NVRA and this Court accordingly denied the defendants' motion to dismiss under Rule 12(b)(6). *Project Vote*, 752 F. Supp. 2d at 712.

Plaintiffs here have made the same allegations that were made in *Project Vote*. Plaintiff VVA's notice letter sought ten categories of information to which it is entitled under the NVRA.[3]

---

[3] Plaintiffs' notice letter sought the following information and records:

(a) updated registration data since the publication of the 2014 EAC report;

(b) records your office obtained or received from the Alexandria Circuit Court Clerk, United States District Court clerks or other sources regarding individuals who were ineligible to serve on juries because of a lack of American citizenship, death or relocation out of the jurisdiction, including but not limited to records concerning juror qualification questionnaires-whether completed via the Internet or returned through the mail—on which the individual that completed the questionnaire indicated that he or she is not a United States citizen, please include subsequent list maintenance records produced pursuant to inquiries based on this information;

(c) the number of ineligible voters purged by category (e.g., dead, duplicate, ineligible) and by date;

(d) the source agency that provided the identifying information of the purged deceased and when the data was provided;

(MTD, Exh. 1.) Defendant admits that she did not provide the information requested. (MTD ¶ 46 (acknowledging that there is additional information that could be disclosed).) Defendant's admission is *prima facie* evidence of a violation of the NVRA and a sufficient basis to deny her motion to dismiss Plaintiffs' public inspection and information claims under *Project Vote*.

Defendant attempts to circumvent this Circuit's binding law by excusing her refusal to permit an inspection of records on the grounds that Plaintiff did not respond to her demand for additional data and "chart[s]." (MTD ¶ 43.) Fundamentally, NVRA provides Defendant no basis to condition her response on Plaintiffs' provision of additional data she might wish to have. Regardless, a closer inspection of Plaintiffs' notice letter shows that Defendant did not need any additional data to respond to Plaintiffs' requests. For example, "the number of ineligible voters purged . . . by date," "the source agency that provided the data" used for the purge, and "the number of notices sent to inactive voters since the 2014 EAC Report" are categories of information that need no clarification and do not depend on whatever additional data Defendant

---

(e) the number of notices sent to inactive voters since the publication of the 2014 EAC Report including the date, scope and contents of any citywide mailing to all registered voters;

(f) the names of the staff in your office responsible for conducting list maintenance obligations who may appear on list maintenance records or who alter list maintenance records in furtherance of the duties of the office;

(g) the number of ineligible voters removed for criminal conviction, if applicable, and the date of the most recent dataset containing criminal convictions against which you compared voter lists, including communications with other agencies regarding criminal convictions;

(h) the total number of voters registered in your city as of the date of your response;

(i) any records indicating the use of citizenship or immigration status for list maintenance activities, including but not limited to the Systematic Alien Verification for Entitlements (SAVE) Program database. Any other records produced in reliance on other sources of citizenship verification data;

(j) all list maintenance records including federal voter registration forms containing citizenship eligibility questionnaires for the last 22 months.

(MTD, Exh. 2 at 2-3.)

believes justifies her violation of NVRA. (MTD, Exh. 1 at 2.) That information was withheld. The NVRA does not empower an election official to place barriers to applicants seeking public information such as demanding "chart[s]" or data. Indeed, an applicant need not provide *any information* even in a letter to trigger inspection rights. That the Plaintiffs here in fact did provide the basis of the Plaintiffs' concerns, namely the implausible state of the rolls, only reinforces the weakness of the Defendant's argument.

This Court and the Fourth Circuit have affirmed that Plaintiffs have a statutory right to the information requested. *See Project Vote*, 752 F. Supp. 2d at 703; *Project Vote,* 682 F.3d at 334-335. Defendant has admitted that she failed to provide the information requested, and instead conditioned further inspection of information on the receipt of unnecessary data and charts. In short, Plaintiffs allege that they requested information under the NVRA and were denied access. At this stage of the litigation that is all *Project Vote* requires. Plaintiffs' allegations, coupled with Defendant's admission, easily permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, and are sufficient to raise the right to relief "above the speculative level," *Twombly*, 550 U.S. at 555.

## II.    Plaintiffs Have Standing.

Defendant also seeks dismissal under Rule 12(b)(1). Specifically, Defendant contends that Plaintiffs' lack standing, constitutionally, under Article III, and organizationally. Defendants are wrong. Plaintiffs' well-pleaded allegations stating a violation of the NVRA give them statutory standing. Additionally, the harms alleged in the complaint are recognized by the Supreme Court and other federal courts as sufficient to support Article III standing and Defendant's motion to dismiss should be accordingly denied.

**A. Plaintiffs Have Article III Standing Under Count I.**

**i.   Injury in Fact.**

**a.  Plaintiff VVA has suffered injuries in fact.**

An organizational plaintiff "may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to provide its "activities—with the consequent drain on the organization's resources ...." *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010) (*quoting Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

At the pleading stage, an organization need only broadly allege such an injury and the court must "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Accordingly, the Supreme Court in *Havens Realty* held that the plaintiff-organization had sufficiently alleged standing based upon a short description in the complaint: "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's [sic] racially discriminatory steering practices." 455 U.S. at 379 (alteration in original).

Plaintiff VVA alleges similarly:

Paragraph 13: "A central activity of VVA is to promote election integrity and compliance with federal and state statutes which ensure the integrity of elections. VVA additionally equips volunteers for involvement at every stage of the electoral process and promotes legislative ideas that actively protect the rights of legitimate voters, regardless of their political party affiliation or station in life. Defendant's violation of NVRA has impaired and will impair VVA from carrying out this mission and thus VVA has itself has been harmed by Defendant's noncompliance with the NVRA."

Paragraph 22: "Plaintiff VVA has spent considerable time and financial resources in an effort to improve voter rolls in the City of Alexandria and across the Commonwealth, which have contained more registrants than eligible citizens who reside in the City of Alexandria."

Paragraph 23: "As part of its mission, Plaintiff VVA audits Virginia's voter rolls to determine that registered voters are entitled to vote based on the requirements of the Virginia Constitution."

*Judicial Watch v. King* is squarely on point and supports Plaintiff's organizational standing argument. There, the district court found the plaintiff had organizational standing under the NVRA to pursue its list maintenance claim in nearly identical circumstances. *Judicial Watch*, 993 F. Supp. 2d at 923-25. The plaintiff argued that failure to comply with the NVRA had "impaired its ability to 'further its essential purposes and goals.' Specifically . . . to conduct a voter list verification program, which entails comparing voter registration rolls with other publicly available information to identify apparent inaccuracies and deficiencies." *Id.* (internal citations omitted). The district court held that plaintiff's "allegations regarding standing are analogous to those found sufficient by the Supreme Court in *Havens Realty Corporation v. Coleman.*" *Id.*

*ACRU v. Martinez-Rivera* is equally persuasive and further supports organizational standing. In *ACRU*, the plaintiff argued that it sufficiently pleaded an injury in fact when that it alleged that it was forced to "expend resources to compel compliance" with "Defendant's continuing violation of the NVRA." *ACRU* at 9. The defendant objected on three grounds: that the plaintiff's injuries were (1) monitoring costs; (2) costs associated with compiling voter registration statistics; and (3) costs associated with settlement discussions. *Id*. According to the defendant, none of these costs were sufficient to establish an injury in fact. The defendant argued further that the plaintiff had not alleged an injury because it had not conducted an "on-the-

16

ground" activity in the defendant's county, namely, the identification of ineligible voters. *Id*. at 9-10.

The court disagreed, explaining that plaintiff's "general factual allegations of injury from defendant's conduct" were sufficient to establish an injury in fact because "on a motion to dismiss [the court] presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Id*. at 10 (quoting *Ass'n of Comm. Orgs. For Reform Now ("ACORN") v. Fowler*, 178 F.3d 350, 357 (5th Cir. 1999)). Upon these principles, the court held that at the motion to dismiss stage, an allegation that the plaintiff expended resources to compel defendant's compliance with the NVRA is sufficient to establish an injury in fact. *Id*. at 10. Moreover, the court was "unwilling to hold that an organization must conduct some 'on-the-ground' activity as a prerequisite to bringing suit under the NVRA. *Id*. at 11. Rather, it is sufficient to establish an injury in fact for the plaintiff to allege that it "targeted" one area that it alleges is not in compliance with the NVRA. *Id*.

VVA here conducts the same type of civic activity as did the plaintiff in *Judicial Watch* and *ACRU*. The dirtier the voter rolls, the more time, effort and money VVA must spend in any given jurisdiction to fulfill this core mission, a mission which was amply pleaded in the Complaint. When dirty voter rolls remain year after year, as they have in Alexandria, the core mission of VVA is frustrated and injured.

### b. Plaintiff Norcross and other members of VVA have suffered an injury in fact.

Defendants additionally contend that Plaintiff Norcross and VVA's other members' alleged harms concerning "confidence in the legitimacy of elections in Virginia" (Complaint ¶ 28) and "avoiding vote dilution" (Complaint ¶ 27) are insufficient to establish an injury in fact. The Supreme Court and Virginia's own Board of Elections say otherwise.

17

In *Judicial Watch*, the court responded to identical standing objections in the following way: "There can be no question that a plaintiff who alleges that his right to vote has been burdened by state action has standing to bring suit to redress that injury." *Judicial Watch*, 993 F. Supp. 2d at 924. Indeed, "the right of suffrage can be denied by a debasement or *dilution* of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.'" *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (emphasis added) (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)). Moreover, as the Supreme Court has recognized

> *Confidence in the integrity of our electoral processes* is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised.

*Id*. (emphasis added).

The Supreme Court has held that "public *confidence* in the integrity of the electoral process has *independent significance*, because it encourages citizen participation in the democratic process." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008) (emphasis added). The Virginia Department of Elections, Virginia's elections authority, has endorsed these interests as compelling in its defense of its voter identification law in this Court. *See Lee v. Virginia State Board of Elections*, No. 3:15-cv-357, Dkt. 49 at 2 (filed Aug. 28, 2015). "If the state has a legitimate interest in preventing that harm from occurring, surely a voter who alleges that such harm has befallen him or her has standing to redress the cause of that harm." *Judicial Watch*, 993 F. Supp. 2d at 924.

ii.     **Plaintiffs' Injuries are Traceable to the Defendant.**

The "fairly traceable" requirement of standing exists to ensure there is a "genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (citing *Lujan*, 504 U.S. at

560). This inquiry simply asks whether the alleged injury is "not the result of the independent action of some third party not before the court." *Id.* at 162. Defendant herself has answered that question when she admits she is legally responsible for maintenance of Alexandria's voter rolls (MTD ¶ 74) and therefore the harms inflicted on the Plaintiffs are easily traceable to her failure to remove ineligible voters from the rolls.

### iii.    Plaintiffs' Injuries are Redressable.

A plaintiff "shows redressability by 'alleging a continuing violation or the imminence of a future violation' of the statute at issue." *Friends of the Earth*, 204 F.3d at 162 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)). The Complaint contains allegations that Defendant has violated the list maintenance provisions of the NVRA by failing to "make[] a reasonable effort to remove the names of ineligible voters" from Alexandria's voter rolls in violation of the NVRA. (Complaint ¶ 8.) An order from this Court instructing her to do so would squarely address her violations of that statute.

Other federal courts have demonstrated that Plaintiffs' claims are redressable when those courts entered remedial decrees by consent aimed at curing defective voter rolls in NVRA cases. The United States District Court for the Western District of Texas entered a remedial consent decree in *American Civil Rights Union v. Sheriff/Tax Assessor-Collector William "Clint" McDonald*, No. 2:14-cv-12-AM-CW, Dkt. 13 (filed March 17, 2015) (attached as Exhibit 2), to fix particular list maintenance problems. The United States District Court for the Southern District of Mississippi entered remedial consent decrees under the NVRA to redress list maintenance circumstances in multiple cases. *See American Civil Rights Union v. Walthall County, Mississippi Election Commission*, No. 2:13-cv-86-KS-MTP, Dkt. 14 (filed Sept. 4, 2013) (attached as Exhibit 3); *American Civil Rights Union v. Jefferson Davis County, Elections*

*Commission*, No. 2:13-cv-87-KS-MTP, Dkt. 20 (filed October 18, 2013) (attached as Exhibit 4); *American Civil Rights Union v. Clarke County, Mississippi Election Commission*, No. 2:15-cv-101-KS-MTP (filed Nov. 25, 2015) (attached as Exhibit 5). Each of these particularized decrees redressed localized list maintenance practices, and Plaintiffs here seek a remedy to redress whatever circumstances allowed Alexandria's voter rolls to contain more registrants than eligible citizens alive, as alleged by the Complaint. (Complaint ¶¶ 11-12.)

Defendant effectively admits Plaintiffs' injuries are redressable when she states that the requested relief "would force Defendant to follow the NVRA." (MTD ¶ 69.) That is the precise relief Plaintiffs have demanded. (Complaint, Prayer for Relief at 2-3.) It is no answer to the redressability question to claim, as Defendant does, that the NVRA has not been violated. (MTD ¶ 69.) That question goes to the merits of Plaintiffs' claim, which is not an appropriate inquiry at the pleading stage. *Presley*, 464 F.3d at 483. It is sufficient at this stage that Plaintiffs have alleged a plausible violation of the statute. *Friends of the Earth*, 204 F.3d at 162.

The precise contours of an order requiring Defendant to begin taking reasonable efforts to remove ineligible voters from her voter rolls will necessarily come after liability has been established. The contents of such an order need not be described at this stage of the litigation but could certainly require the Defendant to utilize a variety of public information to better maintain registration lists. The dispute is redressable.

**B.  Plaintiffs Have Standing Under Count II.**

**i.  Defendant's Arguments that Plaintiffs Have Not Suffered an Injury in Fact Are Foreclosed by *Project Vote*.**

*Project Vote* also controls, and defeats, Defendant's claim that Plaintiffs lack standing under Count II because they have not suffered an injury in fact. In *Project Vote* the defendants moved to dismiss claiming, as Defendant does here, that Project Vote did not suffer "an 'injury

in fact' and, thus, cannot state a valid claim" under the public records provision of the NVRA. *Project Vote*, 752 F. Supp. 2d at 701. In response, this Court stated that "'[t]he actual or threatened injury required [for standing] may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" *Id.* (internal citations omitted). Looking to the complaint and moving papers, this Court defined the plaintiff's stated injury in the following way: [D]efendants' refusal to allow *access to the Requested Records*, to which Project Vote was purportedly entitled under the NVRA was a direct informational injury to Project Vote." *Id.* at 702 (emphasis in original); *see also id.* n.6 ("The focus of the plaintiff's claim is the denial of access to the Requested Records by the defendants.").

With the injury framed properly, this Court then surveyed Fourth Circuit and Supreme Court authority to determine whether the allegations made were sufficient to state an informational injury in fact. *Id.* In *Salt Inst. v. Leavitt*, 440 F.3d 156, 159 (4th Cir. 2006) the Fourth Circuit recognized that standing based on an informational injury requires a two-fold inquiry into (1) the status of the claimed right, i.e., whether the plaintiff has any right to information, and (2) the concreteness of the alleged injury. *Project Vote*, 752 F. Supp. at 702. This Court found that the contours of this inquiry were explained by two Supreme Court decisions.

In *Public Citizen v. United States Department of Justice*, 491 U.S. 440 (1989), the plaintiff sought records from the American Bar Association's Standing Committee on the Federal Judiciary ("ABA Committee"), pursuant to the Federal Advisory Committee Act ("FACA"), which the Supreme Court held created a statutory "public right to information." *Id.* The plaintiff's request was denied and the plaintiff filed suit.

Because the plaintiff "alleged that the defendant denied it [the] right [to information], the [Supreme] Court rejected the defendant's contention that the plaintiff had not alleged an 'injury sufficiently concrete and specific to confer standing.'" *Project Vote*, 752 F. Supp. at 702-03 (quoting *Public Citizens*, 491 U.S. at 448). In no uncertain terms the Supreme Court held that "refusal to permit . . . [inspection] to the extent FACA allows constitutes distinct injury to provide standing to sue." *Id*. To establish standing for an informational injury "the plaintiff 'need show [no] more than that they sought and were denied specific agency records." *Project Vote*, 752 F. Supp. at 703 (quoting *Public Citizen*, 492 U.S. at 449). Under similar facts, the Supreme Court affirmed its holding in *Federal Election Commission v. Akins*, 524 U.S. 11 (1998). There, the Court reiterated, "[W]hen the plaintiff fails to obtain information *which must be publicly disclosed pursuant to a statute*," the plaintiff does suffer injury in fact. *Project Vote*, 752 F. Supp. at 703 (quoting *Akins*, 524 U.S. at 21) (emphasis in original).

Under the authority of *Public Citizen* and *Akins*, this Court held that "the NVRA provides a public right to information." *Id*. at 703. Because the defendant did not provide records it was required to make publicly available to Project Vote, the "plaintiff's alleged information injury [was] sufficient to survive a motion to dismiss for lack of standing." *Id*. at 703-04.

On appeal in *Project Vote*, the Fourth Circuit affirmed the important informational interests at stake in this case. In discussing the portions of the NVRA implicated in this case, the Court stated that the public inspections provisions "embod[y] Congress's conviction that Americans who are eligible under law to vote have every right to exercise that franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Project Vote*, 682 F.3d at 334-35. The Court went on to find that the scope of records available to a plaintiff under the NVRA is expansive. "Because [the public records provision] merely describes

a specific set of records that must be maintained—and is not an exclusive list—it does not shield completed voter registration applications from [the] public disclosure mandates." *Id*. at 337. Accordingly, Defendant cannot deny that Plaintiffs are entitled to the information requested.[4]

Therefore, under the public records inspection provision of NVRA, for the Plaintiffs here to "sufficiently allege an informational injury, [they] must first allege that the statute confers upon it an individual right to information, and then that the defendant caused a concrete injury to the plaintiff in violation of that right." *Id*. at 702 (internal citations omitted).

There can be no debate that "the NVRA provides a public right to information." *Id*. at 703. Plaintiffs therefore "need show [no] more than that they sought and were denied specific agency records." *Id*. at 703 (internal citations omitted). Plaintiffs have done so. (Complaint ¶¶ 18-19 (showing request); Complaint ¶ 19 (showing denial).) Defendant does not claim that Plaintiffs are not entitled to *any* the information requested. Defendant even admits that she withheld responsive information. (MTD Memorandum ¶ 46 (acknowledging that there is additional information that could be disclosed).) Just as in *Project Vote*, Plaintiffs' "alleged informational interest is sufficient to survive a motion to dismiss for lack of standing." 752 F. Supp. at 703-04.

### ii. Plaintiffs' Informational Injuries are Traceable to the Defendant and are Redressable.

*Project Vote* also instructs that Plaintiffs' informational injuries are "fairly traceable" to the Defendant and would be redressed by an order requiring Defendant to make public the

---

[4] Even if Defendant had argued that Plaintiffs were not entitled to some of the requested records, such an inquiry would not implicate Plaintiffs' standing. As in *Project Vote*, Plaintiffs' "need not prove, for standing purposes, that it has a right to the Requested Records, because this determination depends upon the court's ultimate construction of the statute at issue." *Project Vote*, 752 F. Supp. 2d at 704.

information requested. Indeed, after granting summary judgment to the plaintiff in that case, this Court ordered that the defendants—the individuals who possessed the requested requested—"are permanently enjoined from refusing to permit inspection and photocopying of completed voter registration applications." *Project Vote*, 813 F. Supp. 2d at 745.

Although no more is needed, Defendant also admits that she has the information, but is withholding it solely because of her demand that Plaintiffs supply her with "chart[s]." (*See* MTD, Exh 2; MTD ¶ 43 and 63.) Such an admission is enough to trace Plaintiffs' informational injury to the Defendant and to establish that such an injury would be redressed by an order from this Court requiring Defendant to supply the requested information to the Plaintiffs.

**III.  Plaintiffs' Claims are Ripe.**

Defendant lastly claims that Plaintiffs' claims are not ripe solely because Plaintiffs did not provide her with data and "chart[s]" after making her aware that she was in apparently violation of the NVRA's list maintenance provision. (MTD ¶ 62.) Fundamentally, the NVRA requires no such action by Plaintiffs to establish ripeness. The plain language of the NVRA provides for a private right of action against the Defendant as soon as a "violation is not corrected within 90 days after receipt of a notice" letter. 52 U.S.C. § 20510(b)(2). After such time, Plaintiffs have a clear cause of action under the statute. *Id.*

Defendant asks this court to read into the statute a requirement that an aggrieved plaintiff attempt to "work it out" on the election official's terms before a case is ripe. Defendant's request contravenes established principles of statutory construction. A court "cannot rewrite [NVRA]" to avoid what the "statute expressly permits." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1045 (9th Cir. 2015) (finding standing and ripeness under NVRA) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is

plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.")). Plaintiffs' claims are therefore ripe for adjudication on the face of the NVRA.

*Judicial Watch* also supports the conclusion that this case is ripe. There, the defendant's argument that Judicial Watch did not satisfy the NVRA's statutory notice provision was effectively an argument that Judicial Watch's case was not ripe. The court rejected that argument. Because proper notice was given and the defendant denied that the notice letter "set forth a violation of the NVRA," 993 F. Supp. 2d at 921, the case was allowed to proceed. As explained, Plaintiffs here have similarly satisfied the notice provision and Defendant has similarly denied that a violation is occurring. The underlying facts and posture of *Judicial Watch* and this case are identical.

Plaintiffs' so-called refusal to submit to Defendant's demands for additional data and "chart[s]" changes nothing. Defendant flatly denied in her response letter that Alexandria is in violation of NVRA and even provided data to support her alleged stance. (MTD, Exh. 2 at 1 ("I want to assure you that the City is in compliance with NVRA.").) Defendant repeats her denial throughout her memorandum in support of her motion. (MTD ¶ 69 ("In her response letter, Defendant disagreed with [the] contention" that she was in violation of NVRA.). In other words, Defendant has vehemently denied that she has violated her list maintenance duties and her legal obligation to provide records regarding her list maintenance duties.

Defendant's actions are the same as those of the Defendant in *Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833 (6th Cir. 1997). "The language and legislative history of [NVRA] indicate that Congress structured the notice requirement in such a way that notice would provide states in violation of the Act an opportunity to attempt compliance before facing

litigation." *Id*. at 838. But where the Defendant has flatly refuted the allegedly violations of NVRA, it "clearly indicate[s] that [the Defendant] would continue to refuse to comply with the Act until forced to do so by judicial intervention." *Id*. Any claim that Defendant would have cured the alleged violations before litigation are refuted by her own statements. For all of these reasons, Plaintiffs' claims are ripe for adjudication.

## IV.  Plaintiffs Do Not Need to Satisfy the Test for Preliminary Injunctive Relief at the Pleading Stage.

Defendant devotes five pages of her memorandum arguing against a request that the Plaintiffs have not made, namely against the grant of a preliminary injunction. (MTD ¶¶ 15-19.) Defendant's argument is premature. Whether Plaintiffs are entitled to the relief they seek—an order declaring Defendant is in violation of NVRA—is squarely a merits question, which means it is not an appropriate inquiry when ruling on a motion to dismiss. *Presley*, 464 F.3d at 483 ("Rule 12(b)(6)'s purpose is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

At the pleading stage, the Court must simply "accept as true all well-pleaded allegations," "construe those allegations in the light most favorable to the plaintiff, *Matkari*, 7 F.3d at 1134, and determine whether the court can reasonably infer "that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As explained, Plaintiffs have plausibly stated their entitlement to relief. That is all that is required of them at this stage of the litigation. Defendants' motion to dismiss should therefore be denied.

## CONCLUSION

Defendant's arguments have all been refuted by other federal courts hearing the same claims Plaintiffs have made under the NVRA. Under established, and even binding authority,

Plaintiffs' allegations are sufficient to establish a plausibly entitlement to the relief they seek.

Accordingly, the Defendant's motion to dismiss should be denied.


Dated: May 10, 2016                          Respectfully submitted,

For the Plaintiffs Virginia Voter's Alliance and David Norcross:


                                   _____/s/ J. Christian Adams_____
                                   J. Christian Adams (Va. Bar # 42543)
                                   Noel H. Johnson*
                                   PUBLIC INTEREST LEGAL FOUNDATION
                                   209 W. Main Street
                                   Plainfield, IN 46168
                                   Tel: (317) 203-5599
                                   Fax: (888) 815-5641
                                   adams@publicinterestlegal.org
                                   njohnson@publicinterestlegal.org
                                   *Pro Hac Vice application granted*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of May, 2016, a true and correct copy of the

foregoing Memorandum in Opposition to Anna J. Leider's Motion to Dismiss Pursuant to Rules

12(b)(1) and 12(b)(6) on all parties via this Court's ECF system, which notified the following

counsel of record:

William W. Tunner, Esq. (VSB No. 38358)
David N. Gustin, Esq. (VSB No. 86350)
ThompsonMcMullan
100 Shockoe Slip
Richmond, VA 23219-4140
Phone: (804) 649-6205
Fax: (804) 780-1813
E-mail: wtunner@t-mlaw.com
E-mail: dgustin@t-mlaw.com
*Counsel for Defendant, Anna J. Leider*