

**Exhibit 1**



UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

**FILED**

MAR **3 0** 2015

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

AMERICAN CIVIL RIGHTS UNION,          §
    **Plaintiff**,                                        §
                                                          §
v.                                                         §    Civil Action No.
                                                          §    DR-14-CV-0026-AM/CW
TAX ASSESSOR-COLLECTOR                §
CINDY MARTINEZ-RIVERA,                  §
    **Defendant**.                                      §

## ORDER

Pending before the Court are the Defendant's Motion to Dismiss (Mot. to Dismiss, ECF No. 13) and the Plaintiff's Opposed Motion for Leave to File First Amended Complaint (Mot. to Amend, ECF No. 32). On March 6, 2015, the Honorable Collis White, United States Magistrate Judge, filed a Report and Recommendation (Report, ECF No. 34) in which he recommends that both motions be denied. The Defendant timely filed Objections (Objections, ECF No. 36) and the Plaintiff responded (Response, ECF No. 38). For the reasons stated below, this Report and Recommendation will be **ADOPTED**. Accordingly, the Defendant's Motion to Dismiss and the Plaintiff's Opposed Motion for Leave to File First Amended Complaint are **DENIED**.

## I. BACKGROUND

On March 27, 2014, Plaintiff American Civil Rights Union ("Plaintiff" or "ACRU") filed suit against Defendant Tax Assessor-Collector Cindy Martinez-Rivera ("Defendant") in her official capacity. (Complaint, ECF No. 1.) The Complaint alleges that the Defendant violated the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501–20511,[1] by failing to make a reasonable effort to conduct voter list maintenance programs.[2]

---

[1] The Complaint also briefly references the Help America Vote Act of 2002 ("HAVA"), codified at 52 U.S.C. § 21083. However, as Judge White notes in his Report, the Fifth Circuit has held that HAVA does not provide declaratory relief. *See Morales-Garza v. Lorenzo-Giguere*, 277 F. App'x 444, 446 (5th Cir. 2008) ("HAVA does

ACRU is a nonprofit corporation, "which promotes election integrity, compliance with federal election laws, government transparency and constitutional government." (Complaint, ECF No. 1 at 2, para. 4.)  Pursuant to this goal, ACRU filed the instant Complaint in its individual and corporate capacities, and on behalf of its members who are registered to vote in the State of Texas.  (*Id.*)  The Complaint names the Tax Assessor-Collector as defendant because, under ACRU's interpretation of the NVRA and Texas Election law, she is the official responsible for ensuring that Zavala County complies with the list-maintenance provisions of the NVRA. (*Id.* at 2–4, paras. 5–9.)

According to the Complaint, the voter rolls for Zavala County have more registered voters than there are citizens in the County who are eligible to vote.  (*Id.* at 4, para. 10.)  The Complaint supports this claim by comparing two figures: the number of Zavala County citizens eligible to vote in 2010—8,205 people—and the number of people actually registered to vote in Zavala County in March of 2014—8,623 people.[3]  (*Id.*)  The Plaintiff argues that these figures demonstrate an "implausible" registration rate of 105%.  (*Id.*)  According to the Plaintiff's calculations, Zavala County has failed to maintain accurate voter rolls since at least 2008, when the County's registration rate was 102%. (*Id.* at 5, para. 10.)

The Plaintiff's efforts to improve Zavala County's registration rate began in September 2013, when ACRU sent the Zavala County Clerk a letter stating that the County's registration

---

not itself create a private right of action." (citation omitted)).  The Plaintiff has not objected to this recommendation and this Court finds that it is not in clear error.  *See Error! Main Document Only.Douglas v. United Servs. Automobile Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).  Therefore, this Order will only consider the Plaintiff's claims under the NVRA.

[2] The Complaint also alleges that the Defendant failed to provide information in response to the Plaintiff's written requests and failed to produce records concerning the implementation of programs and activities to ensure the accuracy and currency of official lists of eligible voters for Zavala County, in violation of 52 U.S.C. § 20507(i). (Complaint, ECF No. 1 at 9, paras. 29–33.)  On January 28, 2015, the parties stipulated to the dismissal of this count. (Stipulation, ECF No. 31.)

[3] This figure includes 508 people who had been placed on the State's suspense list, as they are still eligible to vote. (Complaint, ECF No. 1 at 4 n.1.)

rolls have too many registered voters and requesting additional information. (*Id.* at 5–6, paras. 12–15.) Thereafter, the Plaintiff engaged in "numerous discussions" with the Defendant, and members of ACRU visited the Defendant's offices. (*Id.* at 6, para. 16.) When Zavala County's registration rate failed to improve, the Plaintiff brought suit, alleging that the Defendant's failure "to make a reasonable effort to conduct voter list maintenance programs in elections for federal office" violates Section 8[4] of the NVRA. (*See id.* at 8, paras. 24–28.) The Plaintiff contends that this violation has caused it harm by: (1) undermining the confidence that ACRU and its members, including those registered to vote in Texas, place in the integrity and legitimacy of the electoral process; (2) creating the risk of vote dilution; and (3) causing ACRU to engage in a months-long process to help bring Zavala County into compliance with the NVRA. (*Id.* at 5, para. 12; 6, para. 16; 8–9, paras. 26–27.) The Complaint seeks declaratory and injunctive relief as well as attorneys' fees and costs. (*Id.* at 9–10, paras. 1–4.)

On June 4, 2014, the Defendant filed the instant Motion to Dismiss, which presents two grounds for dismissing the Complaint. (Mot. to Dismiss, ECF No. 13.) First, the Defendant claims that the Complaint should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because the Plaintiff can demonstrate neither organizational nor associational standing under Article III. (*Id.* at 6–10.) Second, the Defendant urges the Court to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) because: (1) ACRU did not fulfill the NVRA's notice requirement before filing suit and (2) the Complaint fails to allege specific acts by the Defendant that amount to a violation of the NVRA. (*Id.* at 10–11, 12–15.) The Plaintiff filed a Response in Opposition. (Resp. to Mot., ECF No. 14.)

---

[4] This Order refers to 52 U.S.C. § 20507 as "Section 8" of the NVRA, as the provision appeared under section 8 when the NVRA was enacted as a session law. National Voter Registration Act of 1993, Pub. L. No. 103-31, § 8, 107 Stat. 77 (1993).

On February 18, 2015, the Plaintiff filed an Opposed Motion for Leave to File First Amended Complaint.  (Mot. to Amend, ECF No. 32.)  The Plaintiff sought to amend its original complaint in order to (1) add a member of ACRU who is registered to vote in Texas as a plaintiff and (2) conform the pleadings to a stipulation of dismissal of Count Two of the original complaint.  (*Id.*)

On February 23, 2015, Judge White filed a Report and Recommendation that recommended denying both the Defendant's Motion to Dismiss and the Plaintiff's Motion to Amend the Complaint.  (Report, ECF No. 34.)  The Defendant timely filed Objections to the Report (Objections, ECF No. 36) to which the Plaintiff responded (Response, ECF No. 38).

## II. ANALYSIS

### A. Standard of Review

Where no party objects to a magistrate judge's report and recommendation, the Court need not conduct a de novo review.  *See* 28 U.S.C. § 636(b)(1).  In such cases, the Court need merely review the report and recommendation to ensure that it is neither clearly erroneous nor contrary to law.  *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.1989).  However, when a party objects to the findings or conclusions made in a report and recommendation, the Court is required to make a de novo determination of the portions of the report to which an objection was made.  28 U.S.C. § 636(b)(1).  This review calls upon the Court to independently examine the record and assess the applicable law.  The Court is not required to conduct a de novo review when the objections are frivolous, conclusive, or general in nature.  *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir.1987).  In the case at bar, Judge White's Report recommended that the Defendant's Motion to Dismiss be denied.  The Defendant objected to five of the Report's conclusions: (1) ACRU established that it has organizational standing; (2)

4

the Tax Assessor-Collector is the proper defendant; (3) ACRU may use United States census data to demonstrate that the Defendant violated the NVRA; (4) ACRU adequately stated a claim for relief under Federal Rule of Civil Procedure 12(b)(6); and (5) ACRU alleged sufficient notice, as required under the NVRA.  (Objections, ECF No. 36.)  The Court will review these conclusions de novo.  However, neither party objected to the conclusion that ACRU does not have associational standing or the recommendation that the Plaintiff's Motion to for Leave to Amend the Complaint be denied.  Therefore, the Court will review those portions of the Report for clear error. Lastly, the Report provides a clear explanation of the NVRA and the pertinent portions of the Texas Election Code. (Report, ECF No. 34 at 4–6.)  For the sake of brevity, that portion of the Report will not be reproduced in this Order, but incorporated into this Order by reference.

## B. Motion to Dismiss

### 1. Article III Standing

Constitutional standing is an issue of subject matter jurisdiction, *Cobb v. Cent. States, Sw. & Se. Areas Pension Fund*, 461 F.3d 632, 635 (5th Cir. 2006), which must be resolved as a threshold matter because "when [jurisdiction] ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted).[5]  As the party seeking to invoke federal jurisdiction, the plaintiff has the burden to demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  At the pleading stage, a court looks to the complaint in which the plaintiff must make general factual allegations that indicate that standing is plausible. *Id.* ("[O]n a motion

---

[5] Courts should consider Rule 12(b)(1) jurisdictional issues before addressing other Rule 12 issues. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (citation omitted)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To determine whether the plaintiff has met this burden, the court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).

An organization can demonstrate standing in two ways: associational standing and organizational standing.  In the instant case, ACRU alleged both associational and organizational standing.

An organization that establishes associational standing can bring suit on behalf of its members even in the absence of injury to itself.  *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 342.  To do so, the organization must demonstrate that: (1) "its members would otherwise have standing to sue in their own right;" (2) "the interests it seeks to protect are germane to the organization's purpose; and" (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 343.  Judge White's Report concluded that ACRU failed to demonstrate the first element because the injuries alleged in the complaint—undermined voter confidence and potential vote dilution—merely amount to generalized grievances about the government, which do not give rise to associational standing.  (Report, ECF No. 34 at 15.)  The Plaintiff did not object to this recommendation, so this Court reviews it for clear error.  *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.1989).  After carefully reviewing the record, the Court is of the opinion that ACRU lacks associational standing.

An organization, like an individual, can establish standing to sue on its own behalf by demonstrating three elements: (1) the organization suffered an injury in fact this is both "concrete and particularized, and actual or imminent, not conjectural or hypothetical;" (2) the injury is "fairly traceable to the challenged action of the defendant;" and (3) it is likely, "as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (footnote, citations, and internal quotation marks omitted); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1992). The Defendant objected to the Report's conclusion that ACRU had sufficiently alleged all three elements.

The first element of constitutional standing requires a plaintiff to demonstrate a concrete and demonstrable injury. Therefore, allegations of injuries that merely amount to "generalized grievances about the conduct of Government," *Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 217 (1974), or "setback[s] to the organization's abstract social interests," *Havens Realty*, 455 U.S. at 379, will not suffice.

An organization can demonstrate injury "by [alleging] that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to provide its 'activities—with the consequent drain on the organization's resources.'" *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010) (quoting *Havens Realty*, 455 U.S. at 379). At the pleading stage, an organization need only broadly allege such an injury. *Havens Realty*, 455 U.S. at 379. For example, the Supreme Court in *Havens Realty* held that the plaintiff–organization had sufficiently alleged standing based upon a short description in the complaint: "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to

7

identify and counteract the defendant's *[sic]* racially discriminatory steering practices." *Id.* (alteration in original).

However, [n]ot every diversion of resources to counteract the defendant's conduct . . . establishes an injury in fact." *City of Kyle*, 626 F.3d at 238. "[S]elf-inflicted injuries" cannot be used to establish standing because they are not fairly traceable to a defendant's conduct. *Ass'n of Comm. Orgs. For Reform Now ("ACORN") v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999). Therefore, resources expended in pursuit of litigation, including those spent compiling statistical evidence, do not give rise to organizational standing. *Id.* at 358; *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization.") Moreover, "general allegations of activities related to monitoring the implementation of the NVRA" that are not paired with an allegation that such costs are fairly traceable to the defendant's conduct, fail to confer organizational standing. *Fowler*, 178 F.3d at 359.

The presence of a conflict between the defendant's conduct and the organization's mission is "necessary—though not alone sufficient—to establish standing;" importantly, an organization's claim to standing cannot rest on allegations of such a conflict alone. *See id.* at 361 (citation omitted); *see also Schlesinger*, 418 U.S. at 225–26 ("[T]he essence of standing is not a question of motivation but of possession of the requisite interest that is, or is threatened to be, injured by the unconstitutional conduct.").

In the present case, the Report finds that ACRU alleged three distinct injuries in the Complaint: (1) the Defendant's failure to remedy inaccurate voter rolls has undermined ACRU's

and its members' confidence in the electoral system; (2) created the risk of vote dilution; and (3) the Defendant's continuing violation of the NVRA has caused ACRU to expend resources to compel compliance. (Report, ECF No. 34 at 7.) The Report concludes that the first two injuries, undermined voter confidence and the risk of vote dilution, are speculative and, as such, are more akin to a generalized grievance about the government than an injury in fact. (*Id.* at 13–15.) Neither party objected to this conclusion, and this Court finds that it is not clearly erroneous.

The source of the controversy is the Report's third conclusion: that ACRU sufficiently alleged an injury based upon diverted resources. (Report, ECF No. 34 at 10.) The Report's conclusion relies on the following facts set out in the Complaint: (1) ACRU sent Zavala County election officials a "statutory notice letter;" (2) ACRU and the Defendant conducted "numerous discussions over seven months" in an attempt to resolve the dispute; and (3) members of ACRU made "multiple visits" to the Defendant's offices. (Complaint, ECF No. 1 at 5, para. 13; 6, para. 16.) "These allegations," the Report concludes, "sufficiently allege that Plaintiff, in promoting its core mission, has faced roadblocks that have required it to expend substantial resources to counteract what it perceives are violations of the NVRA." (Report, ECF No. 34 at 10.)

The Defendant vigorously contests the Report's conclusion. Importantly, the Defendant does not refer to ACRU's activities in the language used in the Complaint and the Report: sending a notice letter, conducting discussions, and visiting the Defendant's offices. Instead, the Defendant argues that ACRU's allegations of injury are based on: (1) monitoring Zavala County, (2) compiling statistics, and (3) conducting settlement discussions. (Objections, ECF No. 36 at 3, 4.) The Defendant proceeds to argue that monitoring costs do not demonstrate injury in fact under the Fifth Circuit's interpretation of injury in fact in *Fowler*. (*Id.*) Further, the Defendant characterizes compiling statistical evidence and conducting settlement discussions as litigation-

related activities that also do not fulfill the injury in fact requirement under *Fowler*. (*Id.* at 3–4.) Finally, the Defendant argues that ACRU has not alleged an injury because it has not "conducted any on-the-ground activity in Zavala County apart from gearing up for and filing this" suit; namely, it has not identified any ineligible voters on Zavala County's registration rolls and sought their removal. (*Id.* at 5.)

ACRU filed a Reply, in which it argues that the Defendant's reliance on *Fowler* is misplaced because that case addressed organizational standing in the context of a motion for summary judgment. (Reply, ECF No. 38 at 3.) ACRU goes on to differentiate the discussions it conducted with the Defendant from litigation related activities by pointing to the Report's finding that the goal of these discussions was to bring Zavala County into compliance with the NVRA. (*Id.* at 4.) Further, ACRU argues that it is inappropriate to compare its activities to those of organizations that brought suit under Section 7 of the NVRA because organizations suing under Section 8 will have different organizational goals than those suing under Section 7. (*Id.* at 5.) Lastly, ACRU argues that it has properly alleged causation because it would not have conducted discussions with and visited the Defendant if the Defendant had been properly maintaining the voter rolls. (*Id.* at 5–6.)

The Court agrees with the Report; ACRU has sufficiently alleged injury in fact and causation. The Court first notes that this issue arose in the context of a motion to dismiss. At this stage in litigation, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume[e] that general allegations embrace those specific facts that are necessary to support the claim." *Fowler*, 178 F.3d at 357 (alteration in original) (citation omitted). Here, ACRU alleged that it conducted discussions with the Defendant that spanned seven months. The Court will not presume, as the Defendant urges, that

10

these were settlement discussions.  While the Defendant remains free to present evidence that these discussions merely amount to "litigation costs" under *Fowler* on a motion for summary judgment, such an argument on a motion to dismiss is premature.  Furthermore, the Court is unwilling to hold that an organization must conduct some "on-the-ground" activity as a prerequisite to bringing suit under the NVRA.  Although the organization in *Fowler* established standing based on voter registration campaigns it had conducted, the *Fowler* court focused less on the nature of the effort than on the fact that the effort was targeted at areas in which the state had failed to implement the NVRA.  *Id.* at 361.  Like the organization in *Fowler*, ACRU has also targeted one area of Texas, Zavala County, that has allegedly failed to comply with the NVRA.  In sum, the Court finds that ACRU's allegations that it conducted discussions with the Defendant and visited the Defendant's offices in an effort to bring Zavala County into compliance with the NVRA are sufficient to establish both injury in fact and causation.  The Defendant's objections are overruled.

The Defendant raised three objections to the Report's conclusion that the alleged injury is redressable by a favorable decision: (1) it is not appropriate to rely upon statistics from the United States Census Bureau to conclude that the Plaintiff alleged a redressable injury; (2) the alleged injury is not redressable because any injunction the Court could order would merely direct the Defendant to comply with the NVRA; and (3) a County Tax Assessor-Collector is not in a position to redress the alleged injury and therefore is not a proper party in an action brought pursuant to Section 8 of the NVRA.[6]  (Objections, ECF No. 36 at 6 n.1, 9.)  The Court will examine these objections in the order presented.

---

[6] *See Scott v. Schedler*, 771 F.3d 831, 834 n.5 (5th Cir. 2014) (characterizing the Louisiana Secretary of State's argument that it is not a proper party to an NVRA suit because it lacks authority to enforce the NVRA as "part of the standing question related to redressability").

11

At this stage in the litigation, ACRU cannot point to any specific instances in which the Defendant or her predecessor violated the NVRA. (*See* Response, ECF No. 14 at 10–11.) Instead, the Complaint relies on a comparison between the number of citizens eligible to vote in Zavala County—gleaned from the 2010 Census—and the number of citizens who were actually registered to vote in the County at the time ACRU filed its Complaint.[7] (Complaint, ECF No. 1 at 5.)    According to the Complaint, the latter number divided by the former yields an "implausible" registration rate of 105% and gives rise to the strong inference that the Defendant violated Section 8 of the NVRA. (*Id.* at 4–5.) Judge White's Report found that Census data is reliable, took judicial notice of certain statistics from the United States Census Bureau, and concluded that a favorable decision that lowered the registration rate would redress ACRU's injury. (Report, ECF No. 34 at 11–12.) The Defendant objected to the Report's use of statistical data "to the extent that such data might be used as a factual finding in this litigation and to the extent such data is not in evidence." (Objections, ECF No. 36 at 9.)

The Court agrees with the Report's conclusion that United States Census data is reliable and properly subject to judicial notice. A court "may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d). A "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Fifth Circuit has recognized that figures from the United States Census are properly subject to judicial notice. *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571–72 (5th Cir. 2011) ("United States census data is an appropriate and frequent subject of judicial notice." (citations omitted)); *accord, e.g.*, *United States v. Bailey*, 97 F.3d 982, 985 (7th Cir. 1996); *United States v. Esquivel,*

---

[7] This figure includes both the people on Zavala County's voter registration rolls and those on the County's suspense list, who are still entitled to vote, as noted above in Footnote 3. (Complaint, ECF No. 1 at 4 n.1.)

88 F.3d 722, 726–27 (9th Cir. 1996).  Moreover, by taking judicial notice of facts not subject to reasonable dispute, a Court does not convert a motion to dismiss into a motion for summary judgment.  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." (citation omitted)).  Therefore, the Defendant's objection to the use of Census data is overruled.

The Court also agrees with the Report's conclusion that the Plaintiff's injury would be redressed by a favorable decision.  The Report found that "[t]he voting-age population of Zavala County in 2013 was approximately 8,448, yet there were 8,623 people registered to vote in 2014," yielding a registration rate of 102%.  (Report, ECF No. 34 at 12.)  The Report concluded that injunctive relief ordering the Defendant to properly maintain voter rolls would likely improve Zavala County's registration rate and allow ACRU to direct its resources elsewhere.  (*Id.*)  The Defendant objected to this conclusion, arguing that the Plaintiff failed to allege a violation of the NVRA that an injunction could correct.  (Objections, ECF No. 36 at 6–7.)  According to the Defendant, the NVRA does not require counties to attain a specific registration ratio and does not supply a cause of action for the failure to meet some yet-to-be-defined benchmark.  (*Id.*)  The Defendant misinterprets the Report's conclusion.  The Report found that significantly high registration rates, like those in Zavala County, give rise to the inference that a county is not properly implementing a program to maintain an accurate and current voter registration roll, in violation of the NVRA.  (Report, ECF No. 34 at 12.)  The Report did not state that a high registration rate, alone, demonstrates such a violation.  The Plaintiff is not required, at this stage of the litigation, to prove a redressable injury; it is enough to make the allegation.  *See Lujan*, 504 U.S. at 561.  The Court finds the Plaintiff has done so.  Accordingly, the Defendant's objection is overruled.

13

The Court now proceeds to the Defendant's last objection, that the Plaintiff failed to sue the proper party: the Texas Secretary of State. As previously noted, the NVRA requires each state to "ensur[e] the maintenance of an accurate and current voter registration roll for elections for Federal office" by, *inter alia*, "conduct[ing] a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" after a registrant dies or changes residence. 52 U.S.C. § 20507(a)(4), (b). "The NVRA centralizes [compliance] responsibility in the state and in the chief elections officer, who is the state's stand-in." *Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014). The chief elections officer is "responsible for coordination of State responsibilities under" the NVRA. 52 U.S.C. § 20509.

Under Texas law, the chief elections officer is the Secretary of State. Tex. Elec. Code Ann. § 31.001. The Secretary may assign "any function relating to the administration of elections that is under the Secretary's jurisdiction" to the staff in the elections division, and must assist and advise these election authorities on the application, operation, and interpretation of the election laws. *Id.* §§ 31.001, 31.004. However, the Secretary is ultimately responsible for maintaining "uniformity in the application, operation, and interpretation" of the election laws. *Id.* § 31.003. If the Secretary determines that the actions of an election authority are impeding the "free exercise of a citizen's voting rights," the Secretary may order the authority to correct the offending conduct and, if that fails, seek enforcement of the order by a temporary restraining order or a writ of injunction or mandamus. *Id.* § 31.005.

Among these election authorities are the county tax assessor-collectors, who act as voter registrars for each county. *Id.* § 12.001. The registrar's duties include maintaining a suspense list of voters, *Id.* § 15.081, and correcting the voter registration records, "including, if necessary, deleting a voter's name from the suspense list," *Id.* § 15.022(a). Under the NVRA, the voter

registrar has the additional duty of "correct[ing] an official list of eligible voters in elections for Federal office in accordance with change of residence information." *Id.* § 20507(d)(3). By fulfilling these duties, the county tax assessor-collectors enable the Texas Secretary of State to maintain accurate and current voter registration rolls, as mandated by the NVRA. *See* 52 U.S.C. § 20507.

In the present case, ACRU brought suit against the Zavala County Tax Assessor-Collector for "failing to implement a program" to reduce the number of ineligible voters on the county's registration rolls, in violation of NVRA Section 8.  (Complaint, ECF No. 1 at 5.) However, ACRU neglected to join the Texas Secretary of State as a defendant.  The Defendant argues that this failure warrants dismissal of the Complaint because, under the NVRA, she does not have the authority to implement a program to remove ineligible voters from the rolls. (Objections, ECF No. 36 at 6, n.1.)  In its Response, ACRU argues that the NVRA does impose the duty on voter registrars to use data from the United States Postal Service to update voter rolls.  (Response, ECF No. 38 at 13.)   Additionally, ACRU notes that Texas election law imposes a host of other duties on county voter registrars. (*Id.* at 14.)

As the chief elections officer, the Texas Secretary of State has the power to enforce the NVRA and the "ongoing role" of remedying NVRA violations. *Scott*, 771 F.3d at 839.  In the *Scott* case, that curiously both parties failed to cite, the Fifth Circuit held that the Texas Secretary of State is a proper party to an NVRA suit. *See id.* at 833 (holding that the NVRA "gives the Secretary of State enforcement authority" and imposes the "obligation to require . . . state agencies to comply with" the Act).  Indeed, *Scott* highlights the role the Secretary of State plays in ensuring the state complies with the NVRA, although it also notes that the obligation is to

cause the State agents comply with the Act.[8]  *Id.* at 833, 839.  However, the *Scott* court did not

say that the Secretary of State is a necessary party to an NVRA suit.  The NVRA itself is also

silent on the subject of necessary parties.  *See* 52 U.S.C. § 20510(b).  In the absence of a holding

to the contrary, this Court is unwilling to dismiss the instant Complaint on standing grounds for

failure to join the Secretary of State.  As previously noted, the Tax Assessor-Collector has

certain obligations under the NVRA as the designated voter registrar and state official.  If the

Defendant has failed to meet her obligations, ACRU can bring a civil suit against her.  The

Defendant's objection is overruled.

### 2. Failure to State a Claim

The Defendant also moved to dismiss the Complaint for failure to state a claim, under

Rule 12(b)(6).  The Defendant argues again that high registration rates do not demonstrate an

NVRA violation; in essence, that the facts in the Complaint do not plausibly demonstrate that

ACRU is entitled to relief.  (Mot. to Dis., ECF No. 13 at 12–15.)  Judge White's Report

concludes that the following allegations, contained in the Complaint, sufficiently plead a cause

of action: (1) Texas election law and the NVRA impose upon the Defendant the duty to maintain

accurate and current registration rolls; (2) voter rolls maintained by the Defendant contain more

voters registered to vote than there are citizens eligible to vote; (3) an implausible 105%

registration rate gives rise to the strong inference that the Defendant failed to conduct a

reasonable voter list maintenance program; and (4) ACRU's members are injured because of the

resulting risk of voter fraud and vote dilution.  (Report, ECF No. 34 at 18.)  The Defendant

objected, arguing that a high registration rate might be consistent with illegal conduct, but it is

equally consistent with a "wide swath" of legal conduct.  (Objections, ECF No. 36 at 9–10); *see*

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

---

[8] Counties and their officials are state officials.

The Court is unconvinced by the Defendant's objection.  Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that "[fails] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Because motions to dismiss are "viewed with disfavor and . . . rarely granted," *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (internal quotations omitted), a court must liberally construe a complaint in the plaintiff's favor, draw all inferences in favor of the plaintiff's claims, and take as true all factual allegations contained in the complaint. *See Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986).  A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Report concludes, and this Court agrees, that the Plaintiff alleged a plausible claim for relief.  The high registration rate in Zavala County creates a strong inference that the Defendant has neglected her duty to maintain an accurate and current voter registration roll.  The Defendant's argument that registration rates exceeding 100% could be the result of the County having a "reasonable purge system but an excellent registration system" or an "imperfect" purge system hampered by flawed data provided by the United States Postal Service is unconvincing. (Objections, ECF No. 36 at 10.)  While these factors may certainly contribute to an inflated registration rate, it is more likely that the Defendant's failure to maintain the voter rolls caused the registration rate to climb.  The Court agrees with the Report that this "strong inference of a violation of the NVRA" is adequate to survive a motion to dismiss under Rule 12(b)(6).  The Defendant's objection is overruled.

### 3. Notice

Lastly, the Defendant objects to the Report's conclusion that the Plaintiff complied with the NVRA's notice requirement. (Objections, ECF No. 36 at 10–11.) The NVRA requires[9] potential plaintiffs to "provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). "If the violation is not corrected within 90 days after receipt of a notice" the aggrieved person may file a civil suit. 52 U.S.C. § 20510(b)(2). The Report noted the lack of case law in the Fifth Circuit interpreting the notice provision, but found that the "language and legislative history of the NVRA 'indicate that Congress structured the notice requirement in such a way that notice should provide states in violation of the Act an opportunity to attempt compliance before facing litigation." (Report, ECF No. 34 at 19–20); *Ass'n of Community Orgs. For Reform Now ("ACORN") v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997); *see also Schedler*, 771 F.3d at 836 (citing *Miller* favorably).

To determine whether a party has provided adequate notice, a Court is not limited to the complaint alone, but may look to documents incorporated into the complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (citation omitted)). The document in question, a letter from ACRU to the Defendant, is attached to the Defendant's Answer (Answer, ECF No. 12 Exhibit 1) and was filed simultaneously with the Motion to

---

[9] Although the language in the NVRA suggests that notice is not mandatory, "[a] person who is aggrieved by a violation of this chapter *may* provide written notice of the violation," 52 U.S.C. § 20510(b)(1), the Fifth Circuit has held that notice is mandatory. *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014). The NVRA notice provision is nonjurisdictional. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 976–77 (9th Cir. 2012). Therefore, when a plaintiff fails to fulfill the notice provision the complaint should be dismissed pursuant to Rule 12(b)(6), not Rule 12(b)(1). *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

Dismiss. *See Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498-99 (5th Cir. 2000) (noting a court may consider documents attached to a motion to dismiss).

ACRU sent the letter to the Zavala County Clerk[10] stating that the County was "in apparent violation of Section 8 of the National Voter Registration Act." (Letter, ECF No. 12-1.) The letter went on to paraphrase and cite the provision of Section 8 that the Defendant was allegedly violating: "election officials [must] conduct a reasonable effort to maintain voter registration lists free of dead voters, ineligible voters and voters who have moved away." (*Id.*) The letter set out the evidence concerning the violation: Zavala County "has significantly more voters on the registration rolls than it has eligible live voters." (*Id.*) The letter urged the recipient to work toward full compliance with the NVRA, warning that the failure to do so could result in a lawsuit and citing the provision of the NVRA that allows a private party to bring suit. (*Id.*) Furthermore, it stated "[t]his letter serves as the statutory notice to your county." (*Id.*)

The Defendant maintains that ACRU's letter was too vague to provide notice of an NVRA violation because the "circumstance"—voter rolls containing more names than there are citizens eligible to vote—is not an NVRA violation. (Objections, ECF No. 36 at 11.) This argument is misplaced. The letter does not claim that a high registration rate is, in itself, a violation. Instead, it indicates that having too many registered voters on county registration rolls is *evidence* that the County has violated Section 8 of the NVRA. The letter gives the Defendant enough information to diagnose the problem. At that point it was the Defendant's responsibility to attempt to cure the violation. Accordingly, the Defendant's objection that notice was inadequate is overruled.

---

[10] Although the Plaintiff attempts to take credit for communication sent by third parties to the Defendant as early as 2012, it appears from the Complaint that the September 12, 2013 letter represents the first contact between the Plaintiff and the Defendant. (Complaint, ECF No. 1 at 5.) Therefore, the Court disregards the earlier communication. *See Scott*, 771 F.3d at 836 (holding that one plaintiff who failed to give the defendant notice could not "piggyback" on the notice given by a second plaintiff in the same case).

**C. Motion to Amend Complaint**

      The Plaintiff moved to amend the Complaint, seeking to add an additional plaintiff and to remove Count 2. (Mot. to Amend, ECF No. 32.)  The Report recommended that the motion be denied for several reasons. (Report, ECF No. 34 at 22–23.)  First, it is not necessary to amend a complaint after the parties stipulate to the dismissal of one of the counts. (*Id.* at 22.)  Second, the additional plaintiff did not provide the requisite notice to bring suit under the NVRA, and would be subject to immediate dismissal if she were joined as a plaintiff. (*Id.*)  Third, the additional plaintiff does not have Article III standing to bring a claim because she did not sufficiently allege an injury in fact. (*Id.*)  Neither party objected to the Report's recommendation and this Court does not find that it is erroneous.  The Plaintiff's Motion to Amend is denied.

### III. CONCLUSION

      For the above reasons, the Court **ADOPTS** the Report and Recommendation prepared by Judge White. (ECF No. 34.)  Accordingly, it is **ORDERED** that the Defendant's Motion to Dismiss (ECF No. 13) is **DENIED** and the Plaintiff's Opposed Motion for Leave to File First Amended Complaint (ECF No. 32) is **DENIED**.

      SIGNED and ENTERED on this 30th day of March 2015.

 

ALIA MOSES
United States District Judge