IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria

VIRGINIA VOTER'S ALLIANCE, Inc.,
and DAVID NORCROSS,

     Plaintiffs,

v.                                                Case No. 1:16-cv-394

ANNA J. LEIDER, in her official capacity as
General Registrar for the City of Alexandria,

     Defendant.

**ANNA J. LEIDER'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DIMISS**

     Anna J. Leider ("Defendant"), by counsel, respectfully submits this Reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  In connection therewith, Defendant respectfully states as follows:

**Procedural Background**

     Virginia Voter's Alliance, Inc. ("VVA") and David Norcross ("Norcross"), a Virginia resident and member of VVA, (collectively as "Plaintiffs") commenced this adversary proceeding by filing a Complaint on April 7, 2016 seeking declaratory and injunctive relief to compel Defendant's compliance with Section 8 of the National Voter Registration Act of 1993 ("NVRA").  Defendant filed a motion to dismiss on April 29, 2016.  Plaintiffs filed their Memorandum in Opposition to Defendant's Motion to Dismiss on May 10, 2016.

**Argument**

     In the Memorandum in Opposition to the Motion to Dismiss, Plaintiffs rely on the conclusory and vague allegations presented in their Complaint.  As previously established, these

statements are insufficient to demonstrate a plausible claim under *Tombley*.  Plaintiffs rely on non-binding decisions from other courts that are factually distinguishable.  Plaintiffs have failed to present facts that are sufficient to state a plausible claim and survive the Motion to Dismiss. *ee Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Plaintiffs must establish "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

## I.      Plaintiffs restate their previous conclusory and vague assertions

In the Memorandum in Opposition, Plaintiffs contend that Defendant is incorrect in arguing that Plaintiffs fail to allege facts that plausibly demonstrate that Defendant has failed to use reasonable efforts to remove ineligible voters from Alexandria's voter rolls.  Plaintiffs argue that its allegations that voter rolls maintained by Defendant contain "more registrants than eligible voting-age citizens or an implausibly high number of registrants" sufficiently established a plausible claim.  Comp. ¶ 11.  In the following paragraph of their argument, however, Plaintiffs insert new information and allegations that were not included in the Complaint.

By way of inference, Plaintiffs argue that "[t]he plain meaning of the former allegation is that Alexandria's voter registration rate has exceeded one-hundred percent of its citizen voting-age population.  That is an impossibly high registration rate and establishes a well-pleaded case." MTD at 5.  This is not what is stated on the face of Plaintiffs' Complaint.  Specifically, Plaintiffs surmise that "voter rolls maintained by the Defendant for the City of Alexandria have contained at *various times* over the *past few* elections cycles, either more registrants than eligible voting-age citizens or an implausibly high number of registrants."  Compl.  ¶ 11.  Plaintiffs fail to cite any U.S. Census Report or any voter registration information that corroborates this vague, conclusory statement.

2

Even assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court "need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Wahi v. Charleston Area Med. Ctr., Inc*., 562 F.3d 599, 615 n.26 (4th Cir. 2009). Moreover, "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com,* 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). In the instant case, Plaintiffs present broad, vague, and conclusory statements that cannot survive a plausibility analysis under *Twombly*.

Despite this failure, Plaintiffs contend they have pled "even more facts" than necessary according to previous persuasive authority. To support this contention, Plaintiffs again erroneously ask this Court to consider Defendant's failure "to use readily available data to remove non-citizens and other ineligible voters from the rolls." Specifically, Plaintiffs argue that Defendant is obligated to "use data available to the City of Alexandria Circuit Court Clerk obtained from jury excusal form." There is no support for Plaintiffs' position and no obligation that Defendant utilize data from jury excusal forms under the NVRA. Accordingly, Plaintiffs' contentions are without merit and only add further confusion to their conclusory and vague allegations.

## II.     Plaintiffs' supporting case law is factually distinguishable

In the Memorandum in Opposition, Plaintiffs rely on a string of federal case law to support its contention that they have established a plausible claim. The majority of Plaintiffs'

argument hinges on authority outside of the Fourth Circuit and, accordingly, is merely persuasive to this Court.  Notably, all of the cited cases are factually distinguishable from the current matter.

      a.     ***American Civil Rights Union***

The crux of Plaintiffs' argument relies on *American Civil Rights Union ("ACRU") v. Tax Assessor-Collector Cindy Martinez-Rivera*, No. 2:14-cv-00026 (W.D. Tex 2014).  Specifically, Plaintiffs argue that the Western District of Texas heard "nearly identical list maintenance claims" in that case and ruled "that an allegation that there are more registrants on the rolls than there are eligible living citizens is sufficient to survive a motion to dismiss."  Pls.' Mot. Dismiss at 6.  While the Western District of Texas ultimately denied the motion to dismiss, the plaintiffs in that matter articulated a plausible claim by asserting detailed facts and allegations that were supported by relevant data and statistics.

In *ACRU*, the plaintiffs alleged that "voter rolls for Zavala County have more registered voters than there are citizens in the County who are eligible to vote."  *Id.* at *2.  This broad, conclusory statement, however, was supported by credible, specific data and statistics cited in the complaint.  Specifically, the court indicated that "[t]he Complaint supports this claim by comparing two figures: the number of Zavala County citizens eligible to vote in 2010 – 8,205 people – and the number of people actually registered to vote in Zavala County in March 2014 – 8,623 people."  *Id.*  Relying on these statistics, the plaintiffs then alleged that "these figures demonstrate an 'implausible' registration rate of 105%."  *Id.*  Further, the plaintiffs provided specific percentages and numbers of eligible voters during relevant years.  *Id.*  The plaintiffs included in their complaint information supporting their contention that "Zavala County has failed to maintain accurate voter rolls since at least 2008, when the County's registration rate was 102%."  *Id.*

In their Complaint, Plaintiffs offer no additional, specific information other than their blanket allegations that voter rolls "have contained at various times over the past few elections cycles, either more registrants than eligible voting-age citizens or an implausibly high number of registrants." Compl. ¶ 11. Plaintiffs fail to cite any specific or reliable data supporting their claims. While the plaintiffs in *ACRU* cited specific studies pertaining to various elections, Plaintiffs fail to provide any specific report, data or *even any year* or *specific election* where more registrants than eligible voting-age citizens were included on voter rolls. Accordingly, the Complaint is wholly different from the specific and particularized allegations enumerated in *ACRU*. Instead, Plaintiffs offer vague and conclusory statements that do not amount to plausible claim.

Furthermore, in *ACRN*, the plaintiffs' actions in notifying the Defendant are remarkably distinguishable from Plaintiffs' litigious behavior in the current matter. In *ACRU*, the plaintiffs "efforts to improve Zavala County's registration rate began in September 2013, when ACRU sent the Zavala County Clerk a letter stating that the County's registration rolls have too many registered voters and requesting additional information." *Id.* at *2-3. In response to the initial letter, the plaintiffs and defendant engaged in "numerous discussions" and members of ACRU visited defendant's office to discuss the issues. *Id.* at *3. The plaintiffs brought suit only after these methods failed and Zavala County's registration rate failed to improve. *Id.*

Here, Plaintiffs sent Defendant a notice letter indicating that "your city is in apparent violation of Section 8 of the National Voter Registration Act based on our research." Compl. ¶ 6. When Defendant contacted Plaintiffs to further discuss the claims, Plaintiffs refused and filed suit. Accordingly, Plaintiffs' actions are strikingly different from the discussions between the parties in *ACRU*. Plaintiffs never engaged in any discussion with Defendant. Importantly, like

the defendant in *ACRU*, Defendant invited more discussion and information regarding the claims. In response, Plaintiffs rejected this invitation and filed the current suit. As such, the factual background of *ACRU* is distinguishable and remarkably different from Plaintiffs' actions in the current matter.

    **b.**    ***Project Vote***

Plaintiffs also rely on *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (2012). In *Project Vote*, the plaintiffs were informed that "students at Norfolk State University, a historically African-American college, experienced problems in registering to vote in the November 2008 primary and general elections in Virginia." *Id.* at 333. The plaintiffs were specifically concerned that "the students' registration applications had been erroneously rejected by the Norfolk General Registrar," who was responsible for processing voter registration applications. *Id.* Based on this information, the plaintiffs requested that the Registrar "make available for inspection and copying the completed voter registration applications of any individual who timely submitted an application at any time from January 1, 2008, through October 31, 2008, who was not registered to vote in time for the November 4, 2008 general elections" as well as "documents identifying the reasons the applications were rejected." *Id.* The Registrar denied the plaintiffs' requests. *Id.*

The plaintiffs, however, did not immediately file suit. *Id.* Instead, both parties met at the Registrar's office wherein they discussed the request, which was again refused. *Id.* Rather than filing suit, the plaintiffs "wrote to the Secretary of the VSBE, giving notice that [the Registrar] was allegedly violating NVRA . . . and requesting remedial measures. Eventually, the plaintiffs received an informal opinion of the Attorney General of Virginia, which supported the Registrar's position. *Id.*

6

In the current matter, Plaintiffs do not provide any support for their conclusory and speculative accusations. The plaintiffs' complaint in *Project Vote* was supported by information that students at a historically African-American college had experienced problems in registering to vote in the specific elections in 2008. Plaintiffs do not provide *any specific data* or even a *certain year or election* that supports their contention that "more registrants than eligible voting-age citizens" were registered. Instead, Plaintiffs vaguely contend that "at various times over the past few elections cycles" more registrants than eligible voters were registered. Consequently, Plaintiffs' complaint contains much less specific information than the plaintiffs in *Project Vote* and fails to assert a plausible claim.

Additionally, Plaintiffs sent a notice letter to Defendant that merely asserted "your city is in apparent violation of Section 8 of the National Voter Registration Act based on our research." Defendant responded to Plaintiffs' letter by requesting "additional information about the specific reports and information you relied on to reach your conclusions." Defendant's letter demonstrates that she was unable to adequately accommodate Plaintiffs' requests without additional information. Notably, the information Defendant requested in her response letter is precisely what the Plaintiffs' in *Project Vote* and *ACRU* provided in their Complaint; namely, specific reports and information they relied upon to reach the conclusion. By only alleging conclusory statements without any information to support its claims, the Complaint in the current matter is factually different from the plaintiffs in *Project Vote* and *ACRU*.

Additionally, after receiving the notice letter, Plaintiffs did not set up a meeting or enter any communication with Defendants but ignored the response letter and filed suit. The plaintiffs in *Project Vote*, on the other hand, entered into communications with the Registrar, eventually contacted the VSBE, and received an informal opinion from the Attorney General's office.

7

Plaintiffs were given the opportunity to enter into communications with Defendant and expand upon its notice letter in greater detail. Instead, Plaintiffs chose to rely on its threadbare and conclusory allegations in its Complaint, which fails to state a claim. As such, *Project Vote* is distinguishable.

  **c.**  ***Judicial Watch***

  Plaintiffs argue that *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919 (S.D. Ind. 2012) lends further support to their position. This Indiana case is merely persuasive and not binding upon this Court. In that case, the State of Indiana previously entered into a consent decree in 2006 in response to a lawsuit brought by the United States alleging non-compliance with the NVRA. *Id.* at 921. The plaintiffs filed a complaint alleging that "the State 'made substantial efforts to clean its voter rolls in 2006 in compliance with the consent decree, but that those compliance efforts have not continued through present." *Id.* In its complaint, the plaintiffs demonstrated the State's lack of compliance with "a comparison of 2010 Census data and voter registration data, which indicates that the number of persons registered to vote exceeded the total voting population in twelve Indiana counties and exceeded 90% of the total voting population in another 26 Indiana counties." *Id.* The plaintiffs then "sent a letter outlining these facts to then-Indiana Secretary of State Charlie White and Defendants J. Bradley King and Trent Deckard, Co-Directors of the Indiana Election Division." *Id*.

  Plaintiffs argue that their Complaint is factually similar to the plaintiffs in *Judicial Watch*. In support of this position, Plaintiffs highlight that its notice letter and complaint make the "same allegations that Judicial Watch" did. Plaintiffs' assertion is inaccurate as the plaintiffs in *Judicial Watch* provided specific information regarding certain years and elections wherein infractions had allegedly occurred. Specifically, the complaint demonstrated a lack of

compliance by specifically referencing "a comparison of 2010 Census data and voter registration data, which indicates that the number of persons registered to vote exceed the total voting population in twelve Indiana counties and exceeded 90% of the total voting population in another 26 Indiana counties." *Id.*

By comparison, Plaintiffs do not offer such specifics and merely surmised that the City of Alexandria "is in apparent violation of Section 8 of the National Voter Registration Act based on our research." Plaintiffs failed to provide any information, reports, or statistics to support its allegation. In contrast, the plaintiffs in *Judicial Watch* provided a specific allegation that was supported by credible information. Plaintiffs were given the opportunity to provide the same after Defendant requested additional documents in its response note, which Plaintiff ignored and filed suit. Consequently, *Judicial Watch* is factually distinguishable from the current matter.

### III.   Plaintiffs fail to state particularized facts demonstrating standing

In order to establish standing, Plaintiffs must demonstrate the they are "under threat of suffering 'injury in fact' that is *concrete and particularized*; the threat must be actual and imminent, not *conjectural or hypothetical*; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summer v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)(emphasis added). Plaintiffs rely on *Judicial Watch* and *ACRU* in support of its allegation that it has suffered an injury in fact. While it is true that the court found that the plaintiffs had established standing, the factual differences between those cases are important.

Plaintiffs support their claims of injury with conclusory, vague, and speculative allegations. In contrast, the plaintiffs in *Judicial Watch* and *ACRU* provided concrete and particularized assertions that cited Census Reports and data supporting their position. Plaintiffs

in the current matter fail to offer any evidence outside of generalizations.  Importantly, Plaintiffs cite a variety of cases that actually support Defendant's position.

"'[S]elf-inflicted injuries' cannot be used to establish standing because they are not fairly traceable to a defendant's conduct." *ACRU*, at *8 (quoting *Ass'n of Comm. Orgs' For Reform Now ("ACORN") v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999).  "Therefore, resources expended in the pursuit of litigation, including those spent compiling statistical evidence, do not give rise to organizational standing." *Id.* (citing *Fowler*, 178 F.3d at 358).  Moreover, "'general allegations of activities related to monitoring the implementation of the NVRA' that are not paired with an allegation that such costs are fairly traceable to the defendant's conduct, fail to confer organizational standing." *Id.* (quoting *Fowler*, 178 F.3d at 359).

Plaintiffs have failed to establish any evidence that Defendant is responsible for any of the alleged actions because they have not established a specific claim.  There is no specific evidence, as there was *Judicial Watch* and *ACRU*, which can be traced to Defendant.  Plaintiffs fail to cite any supporting reports, data, or analysis and exclusively rely on vagaries and speculation.  Accordingly, any resources expended by Plaintiffs were self-inflected injuries.  Therefore, this matter is distinguishable from the Texas and Indiana federal courts decisions in *Judicial Watch* and *ACRU*.

Lastly, Plaintiffs rely on consent orders to support their argument that their injury is redressable.  Specifically, Plaintiffs cite consent decrees entered by Texas and Mississippi federal courts to redress list maintenance circumstances.  These decrees should be given no consideration as they are neither binding nor persuasive upon this Court.  Overall, Plaintiffs cannot establish standing because they have not sufficiently alleged any wrongdoing by Defendants.  Rather, Plaintiffs' Complaint is replete with vagaries and speculation that are

wholly unsupported by reports and data.   This is a major distinction between Plaintiffs'
complaint and those filed in *Judicial Watch*, *ACRU*, and *Project Vote*, which Plaintiffs heavily
rely upon.   As such, Plaintiffs have failed to establish standing and state a plausible claim.
Accordingly, this Court should grant Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P.
12(b)(1) and (6) and dismiss the Complaint with prejudice.

WHEREFORE, Anita J. Leider, in her official capacity as General Registrar for the City
of Alexandria, respectfully requests that the Court: (i) dismiss the Complaint filed by the
Virginia Voter's Alliance, Inc. and David Norcross with prejudice for lack of constitutional and
organizational standing; (ii) dismiss the Complaint filed by the Virginia Voter's Alliance, Inc.
and David Norcross with prejudice for failure to state a claim upon which relief can be granted
pursuant to Fed. R. Civ. P. 12(b)(6); and (iii) grant Defendant such other and further relief as
may be just and proper.

Respectfully submitted,

ANNA J. LEIDER, in her official capacity
General Registrar for the City of Alexandria

By: ___/s/ William W. Tunner_____
                   Counsel

William W. Tunner, Esquire (VSB #38358)
David N. Gustin, Esquire (VSB #86350)
*Thompson*McMullan, P.C.
100 Shockoe Slip
Richmond, Virginia 23219
Telephone: (804) 698-6205
Facsimile: (804) 780-1813
Email: wtunner@t-mlaw.com
Email: dgustin@t-mlaw.com
*Counsel for Anna J. Leider*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of May, 2016, a true and accurate copy of the foregoing Motion was served via the Electronic Case Filing (ECF) system, as appropriate and as indicated, on the following parties:

J. Christian Adams (VSB#42543)
Noel H. Johnson
Public Interest Legal Foundation
209 W. Main Street
Plainfield, IN 46168
Phone: (317) 203-5599
Fax: (888) 815-5641
E-mail: adams@publicinterestlegal.org
E-mail: njohnson@publicinterestlegal.org

 /s/ William W. Tunner_____
William W. Tunner