UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____
                                                                  )
VIRGINIA VOTER'S ALLIANCE and      )
DAVID NORCROSS,                              )
                                                                  )
                         Plaintiffs,              )
                                                                  )
            v.                                              )          No. 16-394-LMB/MSN
                                                                  )
ANNA J. LEIDER, in her official capacity )
as General Registrar for the                  )
City of Alexandria,                               )
                                                                  )
                         Defendant.            )
_____)

**BRIEF IN SUPPORT OF THE
MOTION OF THE LEAGUE OF WOMEN VOTERS OF VIRGINIA
TO INTERVENE**

Proposed intervenor the League of Women Voters of Virginia (the "League") seeks to protect the interests of individual voters and ensure that no voter in the City of Alexandria has their registration improperly or illegally canceled in advance of the 2016 General Election as a result of the Plaintiffs' request for court-ordered voter "list maintenance." No such court-ordered action is appropriate under—much less required by—the National Voter Registration Act ("NVRA"), a federal statute designed to make it *easier* for voters to obtain and maintain their registration to vote. The League thus respectfully moves to intervene in this matter and file the attached League of Women Voters of Virginia Brief in Support of Motion to Dismiss Count I (Exhibit A hereto), hereby lodged with the Court.

**I.     The Vital Interests of the League in Protecting Voting Rights and Voter Registration.**

The League is a nonprofit, nonpartisan membership organization that has been conducting voter registration drives and voter education and outreach in Virginia for decades. The League has a strong interest in promoting and protecting the registration of voters in the City of Alexandria. The League likewise has a strong interest in opposing the aggressive—and potentially unlawful—list-maintenance strategies that Plaintiffs would have the Court order as relief in Count I of the Complaint. To be sure, the League has at least as much interest as the Plaintiffs with respect to the relief requested in Count I of the Complaint.

**II.    The Court Should Grant the Motion to Intervene.**

"[L]iberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986); *Town of Davis v. W. Virginia Power & Transmission Co.*, 647 F. Supp. 2d 622, 629 (N.D. W. Va. 2007) (quoting the same).

### a.   The Court Should Grant the Motion to Intervene as of Right.

Federal Rule of Civil Procedure 24(a) provides:

> [o]n timely motion, the court must permit anyone to intervene who:
> . . .
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The League satisfies the Rule's requirements for intervention as of right.

### i.   The Motion to Intervene Is Timely.

"In order to properly determine whether a motion to intervene in a civil action is sufficiently timely, a trial court in this Circuit is obliged to assess three factors: first, how far the

underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. Env. Protection Agency*, 758 F.3d 588, 591 (4th Cir. 2014).

Where, as here, a case has not progressed beyond the initial pleading stage, a motion to intervene is timely. *United States v. Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012) ("Here, the Motion to Intervene was filed in a timely manner.  The United States filed its Complaint on January 26, 2012.  The Petitioners filed their motion on March 2, 2012—before the initial pleading stage had finished.  Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely.").

Furthermore, "[t]he most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." 7C Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1916 (3d ed. 2015).  Here:

- the Registrar consents to the requested intervention;
- no other parties have intervened, and the Registrar's motion to dismiss has yet to be heard;
- discovery just started and the case is still in its earliest stage;
- intervention will cause no delay in the case; and
- intervention will impose no extra burden on the Plaintiffs.

Indeed, should the Court properly dismiss Count I of the Complaint for failure to state a claim for relief under the NVRA, the League would no longer seek to participate in the case, unless (a) Plaintiffs were to file an amended complaint again seeking to compel the Registrar to more aggressively conduct list maintenance, risking the unlawful cancellation of valid voter

3

registrations, or (b) if Plaintiffs appealed the dismissal of Count I. Intervention will thus in no way prejudice the Plaintiffs.

### ii. The League's Interests Will Be Impaired If the Alexandria Voting Rolls Are Improperly or Illegally Purged.

For the reasons set forth in the attached Brief, the interests of the League in protecting registration and voting rights are threatened by the court-ordered "voter list maintenance" that Plaintiffs seek to compel in Count I. The threat is particularly grave when the requested relief could itself violate the NVRA. 1/ Any court-ordered action that would result in eligible voters' registrations being put at risk by unnecessary, improper or unlawful purges of the voting rolls would directly harm the interests of the League and its longstanding efforts to promote and maintain lawful voter registration. This potential harm is particularly great in light of the upcoming 2016 General Election.

### iii. The Registrar May Not Adequately Protect the League's Interests.

In determining whether existing parties "adequately represent" the interests of the League, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also United Guaranty Residential Ins. v. Phila. Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987).

Plainly, Plaintiffs and the League have different views regarding the interpretation and application of the NVRA. To the extent Plaintiffs have standing to pursue Count I, the League has a similar interest in ensuring that the NVRA is properly applied consistent with its intended purpose: to protect (rather than impair) the rights of voters to obtain and maintain their registration.

---

1/   The NVRA specifically provides for a private right of action. 52 U.S.C. § 20510(b).

4

The defendant Registrar is a public servant with limited resources and broad responsibilities. As set forth in the City's press release regarding the most recent re-appointment of the Registrar, "[t]he registrar's statutory responsibilities include operating a local office and voter registration services, maintaining voter registration records, certifying candidates for local office, and providing local administration of elections." Alexandria Electoral Board Re-Appoints Registrar of Voters, May 19, 2015, www.alexandriava.gov/84878. As courts recognize in considering requests to intervene in cases where there are only governmental defendants, public officials have different responsibilities and interests than private parties and advocacy groups. *See, e.g., Trbovich,* 404 U.S. 538-39; *United States v. Virginia*, 282 F.R.D. at 405-6; *Cooper Technologies, Co. v. Dudas*, 247 F.R.D. 510, 515 (E.D. Va. 2007); *Nish and Goodwill Services, Inc. v. Cohen*, 191 F.R.D. 94, 97-98 (E.D. Va. 2000). For example, in considering the request of advocacy groups for the visually impaired to intervene in a case involving interpretation of the Randolph–Sheppard Act and its applicability to contracts for military mess hall services in a suit brought against the Secretary of Defense and the Army, the court reasoned:

> From a strategical standpoint, because the government interests in the case are not identical in many respects to the interests of blind business vendors, the government Defendants are likely to take a different approach to the litigation than Applicants. For example, the government must focus their attention on the national security of all citizens of the United States. Yet, the interests of blind business vendors are often distinct from those of the public at large—and it is only this small visually challenged segment of the population that Applicants, for the most part, seek to protect.
>
> Furthermore, Applicants correctly highlight the government's lower threshold of familiarity with the Act—as compared to advocacy groups such as the several Applicants that have tracked the Act's legislative development over the years. Sole representation by the government, therefore, may not be as zealous and effective as representation strengthened by Applicants' calculated intervention.

*Nish*, 191 F.R.D. at 98.

While the interests of the League and the Registrar are aligned with respect to the requested dismissal of Count I, should Count I proceed past the pleading stage, the Registrar has distinct governmental interests—including managing an office, stewarding limited public resources, and running elections—that may affect her approach in defense of the litigation. The interests of the League in this case, on the other hand, are focused entirely on the proper interpretation and application of the NVRA and the protection and preservation of the right to vote. Whether this litigation actually infringes those interests is not the question before the Court on this motion to intervene. "Rather, the Court must determine whether the Complaint simply implicates the significant, yet unrepresented interests of a voiceless group who wishes to intervene." *United States v. Virginia*, 282 F.R.D. at 405-06.

As the League has satisfied all the requirements for intervention as of right, its motion should be granted.

### b. The Court Should Grant Permissive Intervention.

In the alternative, the Court should allow permissive intervention. Rule 24(b)(1)(B) permits intervention on timely motion when a person "has a claim or defense that shares with the main action a common question of law or fact." As discussed above, and in the attached Brief, the League asks the Court to deny Plaintiffs' request to compel the Registrar to conduct processes for list maintenance beyond what the Registrar and the Commonwealth of Virginia currently do and beyond what is required by the NVRA. Indeed, the relief requested in Count I could potentially *violate* the NVRA. The League's request for dismissal of Count I thus presents the same issues of law and fact presented in the main action. As also discussed above, intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

For example, in *Florida v. United States*, 820 F. Supp. 2d 85 (D.D.C. 2011), Florida sought preclearance for changes to its voting laws (including restrictions on voter registration requirements) under Section 5 of the Voting Rights Act. Numerous advocacy groups were "granted leave to intervene permissively as defendants" because they each had "a special interest in the administration of Florida's election laws." *Id.* at 86-87. The League has a similar special interest in the proper interpretation and application of the NVRA in this case, and its voice should be heard.

## CONCLUSION

The Court should grant the League's motion to intervene as of right or, in the alternative, grant permissive intervention.

Respectfully submitted,

 /s/ N. Thomas Connally, III
N. Thomas Connally, III (Va. Bar No. 36318)
Haley K. Costello Essig (Va. Bar No. 85541)
HOGAN LOVELLS US LLP
Park Place II, Ninth Floor
7930 Jones Branch Drive
McLean, VA 22102-3302
T. (703) 610-6100
F. (703) 610-6200
tom.connally@hoganlovells.com
haley.essig@hoganlovells.com

Of Counsel:

Michelle E. Kanter Cohen, Election Counsel
PROJECT VOTE
1420 K Street N.W., Suite 700
Washington, D.C. 20005
T. (202) 546-4173
mkantercohen@projectvote.org


Stuart C. Naifeh, Senior Counsel
Cameron A. Bell, Legal Fellow
DEMOS
220 Fifth Avenue, 2nd Floor
New York, NY 10001
T. (212) 485-6023
snaifeh@demos.org
cbell@demos.org


*Counsel for Proposed Intervenor the
League of Women Voters of Virginia*


Dated: June 10, 2016

## **CERTIFICATE OF SERVICE**

I certify that on the 10th day of June, 2016 the foregoing was filed via the Court's CM/ECF filing system which will send a notification of filing to the following counsel of record:

>John Christian Adams
>Election Law Center PLLC
>300 N. Washington Street
>Suite 405
>Alexandria, VA  22314
>E-mail: adams@electionlawcenter.com
>
>*Counsel for Plaintiffs*
>
>William Woodul Tunner
>Thompson McMullan PC
>100 Shockoe Slip, Third Floor
>Richmond, VA  23219-4140
>E-mail: wtunner@t-mlaw.com
>
>*Counsel for Defendant*
>
>
> /s/ N. Thomas Connally, III
>N. Thomas Connally, III (Va. Bar No. 36318)
>Haley K. Costello Essig (Va. Bar No. 85541)
>HOGAN LOVELLS US LLP
>Park Place II, Ninth Floor
>7930 Jones Branch Drive
>McLean, VA 22102-3302
>T. (703) 610-6100
>F. (703) 610-6200
>tom.connally@hoganlovells.com
>haley.essig@hoganlovells.com