# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

_____
                                    )
VIRGINIA VOTER'S ALLIANCE and       )
DAVID NORCROSS,                     )
                                    )
           Plaintiffs,              )
                                    )
    v.                              )       No. 16-394-LMB/MSN
                                    )
ANNA J. LEIDER, in her official capacity )
as General Registrar for the        )
City of Alexandria,                 )
                                    )
           Defendant.               )
_____)

## LEAGUE OF WOMEN VOTERS OF VIRGINIA
## BRIEF IN SUPPORT OF MOTION TO DISMISS COUNT I

Intervenor the League of Women Voters of Virginia (the "League") respectfully submits this Brief in Support of Motion to Dismiss Count I. The League joins in the Rule 12(b)(6) arguments for dismissal of Count I made by the Registrar, and further states the following:

### Introduction

The National Voter Registration Act ("NVRA") was passed to make it easier for citizens to obtain and maintain their registration to vote. Section 20507 of the NVRA was designed as a shield to protect voters from losing their registration and ability to vote, but Plaintiffs erroneously seek to use this section as a tool to potentially disenfranchise properly registered voters in the City of Alexandria.

## The NVRA

As the Third Circuit explained in *Welker v. Clarke:*

> One of the NVRA's central purposes was to dramatically expand opportunities for voter registration and to ensure that, once registered, voters could not be removed from the registration rolls by a failure to vote or because they had changed addresses.

239 F. 3d 596, 598-99 (3d Cir. 2001). The NVRA provides robust protections against the erroneous removal of voters from the registration rolls for federal elections. These protections generally bind any state actor seeking to cancel voter registrations. Indeed, a lawfully registered voter "has a personal right to have his name remain on a register or voting list for the period prescribed by law. A voter may not be deprived of this right without some procedure that," at a minimum, "complies with the requirements of due process." 29 C.J.S. Elections § 77 (2016).

While it is possible to divest a voter from their "personal right to . . . remain on a register or voting list," the NVRA permits such action only in limited circumstances. *See* 29 C.J.S. Elections § 77; 52 U.S.C. § 20507. Specifically, the NVRA provides that "the name of a registrant may not be removed from the official list of eligible voters except" where:

- the registrant requests to be removed, § 20507(a)(3)(A);

- required by State law by reason of criminal conviction or mental incapacity, § 20507(a)(3)(B);

- the registrant has died, § 20507(a)(4)(A); or

- the registrant's residence has changed, § 20507(a)(4)(B), but *only where* the registrant:

    o confirms in writing that the registrant has moved to a place outside of the registrar's jurisdiction, § 20507(d)(1)(A); or

    o fails to respond to written notice (including a postage pre-paid response card) from the registrar *and* fails to vote in two successive federal general elections after the date of the notice, § 20507(d)(1)(B).

2

Section 20507(a)(4) does require the registrar to "conduct a general program that makes a reasonable effort" to remove from official lists the names of voters ineligible by reason of death or change in residence. But the statute expressly provides that "[a] State may meet" the requirement simply by establishing a program using change-of-address information supplied by the Postal Service. 52 U.S.C. § 20507(c)(1)(A). Moreover, the "general program" under § 20507(a)(4)(a) must comply with the other provisions of the statute, and (b) cannot include the systematic removal of ineligible voters within 90 days of any federal election, § 20507(c)(2)(A).

### Count I Fails to State a Claim under the NVRA

Turning the statute on its head, Plaintiffs point to the registration removal protection provisions of the NVRA, and then ask the Court to order the Registrar to execute "voter list maintenance programs to ensure that only eligible voters are registered to vote in the City of Alexandria." Compl. ¶ 1. There is no requirement in the NVRA for the Registrar "to ensure that only eligible voters are registered to vote in the City of Alexandria," and no claim under the NVRA for the unspecified relief requested in Count I. Moreover, with the General Election looming on November 8, 2016, no program of systematic removal of ineligible voters can take place in Alexandria after August 10, 2016. 52 U.S.C. § 20507(c)(2)(A).

Plaintiffs' effort to disregard the plain and specific requirements of the NVRA must be rejected. In construing the NVRA, like any other federal statute, "the court applies the plain meaning of the statutory language, unless there is a clearly expressed legislative intent to the contrary, or 'when a literal application would frustrate the statute's purpose or lead to an absurd result.'" *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 705 (E.D. Va. 2010), *affirmed* 682 F.3d 331 (4th Cir. 2012). Section 20507(a)(4) only requires the State to conduct a "general program" that makes a "reasonable effort" to remove from the official lists voters

3

ineligible by reason of death or change in residence. There is no question that Virginia conducts a "general program" for precisely that purpose. *See, e.g.*, Va. Code § 24.2-427. Virginia's program follows the direction in NVRA § 20507(c)(1)(A), thereby satisfying the requirements of § 20507(a)(4). *See* Va. Code § 24.2-428. Plaintiffs do not and cannot allege that the Registrar has violated any aspect of Virginia's general program adopted in compliance with the NVRA.

Unable to plead any violation of the express requirements of § 20507(a)(4), Plaintiffs attempt to read into the statute into a requirement "to remove the names of ineligible voters" generally. Pls.' Opp'n to Mot. to Dismiss (Dkt. 15) 5. But the statute imposes no such requirement. Further, as well argued by the Registrar, there are no actual alleged facts, as opposed to conclusory contentions, in the Complaint even suggesting, much less plausibly establishing, any non-compliance with the NVRA by the Registrar. Rather, it appears that Count I rests entirely on two thin factual allegations:

First, Plaintiffs make the vague and unsubstantiated assertion that "[a]ccording to publicly available data disseminated by the United States Census Bureau and the federal Election Assistance Commission, voter rolls maintained by the Defendant for the City of Alexandria have contained at various times over the past few election cycles either more registrants than eligible voting-age citizens or an implausibly high number of registrants." Compl. ¶ 11. As an initial matter, this allegation lacks the specific facts necessary to draw any cognizable conclusion. No specific census or registration data are identified as the supposed reference points, no specific comparison is made between census data and registration data, and no timeframe other than "the last few election cycles" is stated. Similarly, there are no specific allegations *at all* as to what Plaintiffs mean by an "implausibly high number of registrants" or when there were supposedly

4

such an "implausibly high number of registrants" on the voting rolls in Alexandria.  Such a vaporous allegation provides no foundation for a viable claim of violation of the NVRA.

Moreover, it is simply wrong to assume that a large number of registrants—even an amount exceeding the voting age population—on its own supports a plausible claim for violation of the NVRA. 1/  The NVRA is specifically designed to restrict and slow down the removal of ineligible voters from the rolls to ensure that eligible voters do not improperly lose their registration and their ability to vote.  Under the NVRA, when a registrant moves away from Alexandria, unless that registrant either (1) specifically requests to be removed from the rolls, § 20507(a)(3)(A), or (2) responds to the written notice sent by the Registrar confirming that they no longer reside in Alexandria,  § 20507(d)(2), the registrant *cannot be removed* from the official voting lists for two federal general elections after the date of the statutory notice, § 20507(d)(1), a period of anywhere from two to four years *after* the notice is sent.  Furthermore, for the 90-day period leading up to a federal election, there can be no systematic removal of voters from the rolls, including removal based on change of address.  § 20507(c)(2)(A); *see also Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014).  Under the NVRA, it is thus expected that there will be many registrants who have, in fact, moved away from a jurisdiction yet remain on the jurisdiction's voting list for years.  Moreover, under Virginia law, voters who have left Alexandria but remain in the Commonwealth may still legally vote in their old precincts for certain periods of time.  Va. Code § 24.2-401.

---

1/      Plaintiffs' reliance on *Judicial Watch v. King* to oppose dismissal for failure to state a claim is misplaced. Pls.' Opp'n 8-10.  The court in *Judicial Watch* did not rule that the plaintiffs had met their Rule 8 pleading burden merely by referencing a comparison between census data and registration data.  993 F. Supp. 2d 919, 921-23 (S.D. Ind. 2012).  Rather, the Court was instead determining whether plaintiffs had satisfied the requirement of providing written notice of the claimed NVRA violation before bringing a civil action for relief.  *Id.*; 52 U.S.C. § 20510(b).  While the ruling in the *ACRU* case does lend support to Plaintiffs' position, *see* Pls.' Opp'n 6-8, and Ex. 1 thereto at 16-17, the League respectfully submits that the Western District of Texas simply got it wrong on this point, for all the reasons discussed above.

5

Given this consequence of the registration protection provisions of the NVRA, in a jurisdiction with high voter participation and a relatively transient population, like Alexandria, it is entirely plausible that the number of registrants could exceed the eligible voting age population. Such a situation could just as easily be the result of *compliance* with the NVRA as a supposed violation. Stopping short of the line between possibility and probability, paragraph 11 is not a "plain statement" possessing enough heft to "sho[w] that the pleader is entitled to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Second, Plaintiffs contend that the Registrar has somehow failed to comply with her duties under the NVRA because she allegedly makes no effort to use data "obtained from jury excusal forms." Compl. ¶ 17. But the NVRA makes no mention of—much less requires—use of data obtained from jury excusal forms or the like as part of a registrar's duty to conduct a "general program that makes a reasonable effort to remove the names of ineligible voters … [who have died or moved]." Indeed, reliance solely on Postal Service change-of-address data is expressly sufficient. § 20507(c)(1). Moreover, Plaintiffs themselves allege that the only purpose of using "jury excusal forms" would be to identify "Alexandria residents who self-identify as non-citizens or non-residents …" Compl. ¶ 17. 2/ By Plaintiffs' own allegation, the forms would not reveal death or change of residence and therefore could not be used under § 20507(a)(4). Thus, the jury excusal form allegation likewise provides no basis to draw any plausible inference of a violation of the NVRA.

---

2/   It is unclear what Plaintiffs mean when they allege that jury excusal forms would identify "Alexandria residents who self-identify … as non-residents of the City of Alexandria."

6

**Count I Fails to State a Claim under HAVA**

Plaintiffs also points to the Help America Vote Act ("HAVA"), and its requirement that local officials perform computerized list maintenance on a regular basis. 52 U.S.C. § 21083(a)(2)(A). They do so in an attempt to argue that the Registrar has a "federal obligation to maintain accurate and current voter rolls which contain the names of only eligible voters residing in the City of Alexandria." Compl. ¶ 8. Not so. Removal of registrants is governed by the NVRA, as HAVA itself expressly recognizes. 52 U.S.C. § 21083(a)(2)(A)(1) ("if an individual is to be removed from the computerized list, such individual shall be removed in accordance with the provisions of the National Voter Registration Act"); *see also Project Vote/Voting for Am., Inc. v. Long*, 682 F. 3d 331, 338 (4th Cir. 2012) ("HAVA explicitly states that 'nothing in this [Act] may be construed ... to supersede, restrict, or limit the application of ... The National Voter Registration Act,'" and "HAVA cannot restrict or limit the application of the NVRA's . . . requirement[s]."). For the reasons addressed above, there is no alleged violation of the NVRA. Given the express provisions of HAVA deferring to the NVRA, there is thus no alleged violation of HAVA.

**CONCLUSION**

For the reasons stated above, the Court should dismiss Count I for failure to state a claim.

Respectfully submitted,

 /s/ N. Thomas Connally, III
N. Thomas Connally, III (Va. Bar No. 36318)
Haley K. Costello Essig (Va. Bar No. 85541)
HOGAN LOVELLS US LLP
Park Place II, Ninth Floor
7930 Jones Branch Drive
McLean, VA 22102-3302
T. (703) 610-6100
F. (703) 610-6200
tom.connally@hoganlovells.com
haley.essig@hoganlovells.com

Of Counsel:

Michelle E. Kanter Cohen, Election Counsel
PROJECT VOTE
1420 K Street N.W., Suite 700
Washington, D.C. 20005
T. (202) 546-4173
mkantercohen@projectvote.org


Stuart C. Naifeh, Senior Counsel
Cameron A. Bell, Legal Fellow
DEMOS
220 Fifth Avenue, 2nd Floor
New York, NY 10001
T. (212) 485-6023
snaifeh@demos.org
cbell@demos.org

*Counsel for Proposed Intervenor the
League of Women Voters of Virginia*

Dated: June 10, 2016

8

## **CERTIFICATE OF SERVICE**

I certify that on the 10th day of June, 2016 the foregoing was filed via the Court's CM/ECF filing system which will send a notification of filing to the following counsel of record:

John Christian Adams
Election Law Center PLLC
300 N. Washington Street
Suite 405
Alexandria, VA  22314
E-mail: adams@electionlawcenter.com

*Counsel for Plaintiffs*

William Woodul Tunner
Thompson McMullan PC
100 Shockoe Slip, Third Floor
Richmond, VA  23219-4140
E-mail: wtunner@t-mlaw.com

*Counsel for Defendant*

  /s/ N. Thomas Connally, III
N. Thomas Connally, III (Va. Bar No. 36318)
Haley K. Costello Essig (Va. Bar No. 85541)
HOGAN LOVELLS US LLP
Park Place II, Ninth Floor
7930 Jones Branch Drive
McLean, VA 22102-3302
T. (703) 610-6100
F. (703) 610-6200
tom.connally@hoganlovells.com
haley.essig@hoganlovells.com